## JEROME H. REMICK & CO. v. AMERICAN AUTOMOBILE ACCESSORIES CO.

(Circuit Court of Appeals, Sixth Circuit. April 9, 1925.)

No. 4190.

**1. Copyrights ⬤⟲2—Statute may be applied to new situations.**

The statute giving exclusive rights in copyrighted publications may be applied to new situations, not anticipated by Congress, if fairly construed, such situations come within its intent and meaning.

**2. Copyrights ⬤⟲66—Broadcasting song by advertising radio station held public performance for profit.**

The broadcasting by radio of a copyrighted musical composition by a manufacturing corporation, which maintained and operated the broadcasting station for advertising purposes, *held* a public performance for profit, and an infringement of the copyright.

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; Smith Hickenlooper, Judge.

Suit in equity by Jerome H. Remick & Co. against the American Automobile Accessories Company. Decree for defendant (298 F. 628), and complainant appeals. Reversed and remanded.

Thomas G. Haight, of Jersey City, N. J., and John W. Peck, of Cincinnati, Ohio (Peck, Shaffer & Peck and John W. Weinig, all of Cincinnati, Ohio, and Nathan Burkan, of New York City, on the brief), for appellant.

Marston Allen and Alfred M. Allen, both of Cincinnati, Ohio (Allen & Allen and Powell Crosley, Sr., all of Cincinnati, Ohio, on the brief), for appellee.

Before DENISON, MACK, and DONAHUE, Circuit Judges.

MACK, Circuit Judge. The plaintiff brought bill in equity to enjoin defendant from reproducing by radio broadcasting a musical composition entitled "Dreamy Melody," the copyright of which is owned by plaintiff. The bill alleged that defendant manufactured and sold radio products and supplies for pecuniary profit; that it maintained a radio broadcasting station in Cincinnati as a medium of advertising and publicity, and as a means of bringing its radio products and supplies to the attention of the public, and of stimulating the sale thereof, and that the maintenance of the station was effective for these purposes; that the license from the United States Department of Commerce, Bureau of Navigation Radio Service, to operate as a commercial station, was issued upon application to operate for commercial purposes; that defendant announced its programs to the public by newspaper advertisements and bulletins, and that it started and ended its programs with the announcement, "Station WLW, Crosley Manufacturing Company, Cincinnati, Ohio." The bill further alleged that the defendant charged on its books the radio broadcasting service to its advertising and publicity account. It prayed for injunction and damages. Motion to dismiss the bill was sustained.

The question presented is whether, under the circumstances stated, the broadcasting of a copyrighted musical composition is an infringement of the statutory copyright. By Act March 4, 1909, c. 320, § 1, 35 Stat. 1075 (Comp. St. § 9517), "any person entitled thereto, upon complying with the provisions of this act, shall have the exclusive right * * * to perform the copyrighted work publicly for profit if it be a musical composition and for the purpose of public performance for profit."

[1] While the fact that the radio was not developed at the time the Copyright Act (Comp. St. §§ 9517–9524, 9530–9584) was enacted may raise some question as to whether it properly comes within the purview of the statute, it is not by that fact alone excluded from the statute. In other words, the statute may be applied to new situations not anticipated by Congress, if, fairly construed, such situations come within its intent and meaning. Thus it has been held both in this country and England that a photograph was a copy or infringement of a copyrighted engraving under statutes passed before the photographic process had been developed. Gambart v. Hald, 14 C. B. N. S. 303; Rossiter v. Hall, 5 Blatchf. 362, Fed. Cas. No. 12,082. While statutes should not be stretched to apply to new situations not fairly within their scope, they should not be so narrowly construed as to permit their evasion because of changing habits due to new inventions and discoveries.

Bills have been introduced in both House and Senate to permit broadcasting without infringing copyrights. The rights of composer, producer, performer, and the public under this new method of reproduction are eminently matters for considered legislation; but, until Congress shall have specifically determined the relative rights of the parties, we can but decide whether and to what extent statutes covering the subject-matter gen-

erally, but enacted without anticipation of such radical changes in the method of reproduction, are, fairly construed, applicable to the new situation.

[2] A performance, in our judgment, is no less public because the listeners are unable to communicate with one another, or are not assembled within an inclosure, or gathered together in some open stadium or park or other public place. Nor can a performance, in our judgment, be deemed private because each listener may enjoy it alone in the privacy of his home. Radio broadcasting is intended to, and in fact does, reach a very much larger number of the public at the moment of the rendition than any other medium of performance. The artist is consciously addressing a great, though unseen and widely scattered, audience, and is therefore participating in a public performance.

That, under the Copyright Act, a public performance may be for profit, though no admission fee is exacted or no profit actually made, is settled by Herbert v. Shanley, 242 U. S. 591, 37 S. Ct. 232, 61 L. Ed. 511. It suffices, as there held, that the purpose of the performance be for profit, and not eleemosynary; it is against a commercial, as distinguished from a purely philanthropic, public use of another's composition, that the statute is directed. It is immaterial, in our judgment, whether that commercial use be such as to secure direct payment for the performance by each listener, or indirect payment, as by a hat-checking charge, when no admission fee is required, or a general commercial advantage, as by advertising one's name in the expectation and hope of making profits through the sale of one's products, be they radio or other goods.

In Pastime Amusement Co. v. M. Witmark & Sons (C. C. A. 4), 2 F.(2d) 1020, decided December 20, 1924, affirming (D. C.) 298 F. 470, Jerome H. Remick & Co. v. General Electric Co., S. D. N. Y., decided September 30, 1924, and M. Witmark & Sons v. L. Bamberger & Co. (D. C.) 4 F.(2d) 160, 291 F. 776, the courts have reached this same result. Cf. Kalem v. Harper, 222 U. S. 55, 32 S. Ct. 20, 56 L. Ed. 92, Ann. Cas. 1913A, 1285. There is nothing in White-Smith Music Co. v. Apollo, 209 U. S. 1, 28 S. Ct. 319, 52 L. Ed. 655, 14 Ann. Cas. 628, that affects our conclusion. There the question was whether a perforated music roll was a publishing or copying of music that had been copyrighted. The court expressly stated that the question whether the manufacturers of such perforated music rolls, when sold for use in public performance, might be held as contributory

infringers, was not involved. The question as to what constituted a public performance did not arise.

Reversed and remanded.