### BUCK et al. v. JEWELL–LASALLE REALTY CO.
### No. 8680.

Circuit Court of Appeals, Eighth Circuit.
July 23, 1931.

· See, also, 51 F.(2d) 730.

Thomas G. Haight, of Jersey City, N. J. (Maurice J. O'Sullivan, of Kansas City, Mo., Nathan Burkan, of New York City, E. S. Hartman, of Chicago, Ill., and Louis D. Frohlich, of New York City, on the brief), for appellants.

Charles M. Blackmar and Kenneth E. Midgley, both of Kansas City, Mo. (Meservey, Michaels, Blackmar, Newkirk & Eager, of Kansas City, Mo., on the brief), for appellee.

Before BOOTH and GARDNER, Circuit Judges, and SANBORN, District Judge.

BOOTH, Circuit Judge.

Suit was brought in the United States District Court for the Western District of Missouri by Gene Buck, as president of the American Society of Composers, Authors, and Publishers, and DeSylva, Brown & Henderson, Inc., a corporation, plaintiffs, v. Wilson Duncan, operating Radio Station KWKC, and Jewell-LaSalle Realty Company, a corporation, defendants, for an injunction and damages for infringement of the copyright of a musical production. It was stipulated by the parties that the facts stated in the bill of complaint were true; and certain additional facts were also stipulated. From the bill and the stipulation the following facts have been gathered:

I. The American Society of Composers, Authors, and Publishers (hereinafter referred to for brevity's sake as the society) is an unincorporated association organized and existing under and by virtue of the laws of the state of New York and has its principal place of business in the Southern district of New York. The membership of the society exceeds 700, and is comprised of authors, composers, and publishers of musical works. Said society was organized and is now operating for the purpose of protecting the performing rights in musical works, copyrighted by its members respectively, against infringement because of the public performance thereof for profit.

Gene Buck is president of said society. Because said membership is exceedingly numerous and it would be impracticable to join all the members of said society as parties plaintiff, and the issues and questions involved here are of common and general interest to all of the members of the society, the said society has duly authorized and empowered the said Gene Buck, as president thereof, to institute and prosecute this suit in its behalf; and this suit is accordingly brought by plaintiff Gene Buck, as president of the American Society of Composers, Authors, and Publishers, for and on behalf of said society.

II. The plaintiff DeSylva, Brown & Henderson, Inc. (hereinafter for brevity's sake called the publisher), is a corporation organized under the laws of the state of New York, having its principal place of business in the Southern district of New York, and at all times hereinafter mentioned was engaged in the business of printing, publishing, and vending of copyrighted musical works.

III. The defendant Wilson Duncan is an individual and a resident of the Western district of Missouri; and defendant Jewell-LaSalle Realty Company is a corporation organized and existing according to law having an office and its chief place of business in the Western district of Missouri.

IV. At all of the times herein mentioned, defendant Jewell-LaSalle Realty Company (hereinafter for convenience called the company) owned and operated a certain hotel in Kansas City, Mo., known as the LaSalle Hotel, for the entertainment of its guests and the public generally. Said guests were guests for hire, and said hotel was operated as a commercial enterprise for profit. For the entertainment of the guests in said hotel, and of the public generally, and to promote the business of the company, and to make said hotel an attractive and desirable place, and to attract trade and custom thereto, and in order that renditions of musical compositions might be heard in the hotel daily by the guests, the company, among other instruments and devices, caused to be installed and maintains in said hotel a master radio receiving set, which receives and converts radio waves transmitted from radio broadcasting stations into sound. Said receiving set was equipped with wires leading therefrom to all parts of the hotel, including the public rooms, parlors, and lobby, as well as into about two hundred private rooms. Loud speakers were attached to the wires leading from the receiving set, so that any musical composition picked up by said receiver could be and is simultaneously heard throughout the hotel.

V. At all of the times herein mentioned, defendant Wilson Duncan was the owner of and operated a certain radio station in Kansas City, Mo., known and designated as KWKC. Said defendant was licensed by the government of the United States to operate

such radio station as a commercial station. Such license was issued to said defendant on an application filed by him with the department having jurisdiction, stating that said radio station was operated and was to be operated for business and commercial purposes. Said defendant operated the station for profit and for hire, and received rent and income therefrom from persons engaging the facilities of the station, who desired their names or business to be mentioned over it, so that the same might be heard by the general public for the purpose of advertising such names or business. As a part of the business of said defendant and to make the station profitable to said defendant, and to attract others to engage the facilities of the station and pay therefor, said defendant caused musical compositions to be performed and rendered in and broadcast from the radio station. Such renditions and performances were public and were made available to the public, and were for the purposes of profit, both for said defendant and for others using the station or procuring their names or business to be mentioned over it.

VI. Prior to the 15th day of August, 1927, B. G. DeSylva, Lew Brown, and Ray Henderson, citizens of the United States, created and wrote the words and lyrics of a new and original musical composition; and also prior to that date they composed and set original music to the words and lyrics, constituting a musical composition entitled "Just Imagine."

VII. Prior to the 15th day of August, 1927, the authors and composers assigned such composition to the publisher, including all rights therein and the right to secure copyright therein.

VIII. On the 15th day of August, 1927, the publisher duly copyrighted such composition by publishing the same and offering the same to the general public with the following notice of copyright on the first page of music, to wit: "Copyright 1927 by DeSylva, Brown and Henderson, Inc."

IX. After publication of such composition with such notices of copyright, the publisher promptly on the 16th day of August, 1927, deposited in the office of the Register of Copyrights, Washington, D. C., two complete copies of the best edition thereof then published, accompanied by a claim of copyright, and paid to the Register of Copyrights the fee required by law for the registration of the said work; and said work was duly registered by the said Register of Copyrights, who thereupon issued his certificate of copyright registration therefor as class E, XXc., No. 670767.

X. Since August 15, 1927, such composition has been published by the publisher; and upon each copy of such composition so published, there has been inscribed on the first page of the music the copyright notice required by law, in the words and figures set forth in paragraph VIII hereof.

XI. Prior to the 1st day of January, 1926, the publisher, for a valuable consideration, by an instrument in writing, duly assigned, transferred, and set over to the society the exclusive nondramatic performing rights in and to any and all musical compositions, the copyright of which was then owned by the publisher, for the term commencing January 1, 1926, and ending January 1, 1931, as well as the exclusive nondramatic performing rights in and to any and all musical compositions to be thereafter acquired and copyrighted by the publisher for such term.

XII. The publisher is now the proprietor of the copyright in and to the musical composition mentioned and described in paragraph VI hereof, and all the rights secured under such copyright, except as to the rights assigned to the society as set forth in paragraph XI. The society is now the owner of the exclusive nondramatic performing rights of such musical composition, pursuant to the assignment mentioned in paragraph XI hereof, up to and including the 1st day of January, 1931, and by virtue of such assignment the publisher holds in trust for the society the exclusive nondramatic performing rights of said musical composition secured by said copyright down to and including the 1st day of January, 1931.

XIII. Said composition has been used in connection with the manufacture of parts of instruments serving to reproduce mechanically said musical work, and the publisher has filed a notice thereof, accompanied by the proper recording fee, in the office of the Register of Copyrights, and said notice is on file and is recorded therein, and the recording fee therefor has been paid to the Register of Copyrights.

XIV. On the 4th day of October and on the 7th day of October, 1928, and at other times prior and subsequent thereto, without the previous knowledge or consent of the society or of the publisher, and without subsequent ratification or consent of either the society or the publisher, and with full knowledge of said society's rights in such work and of such copyright belonging to the publisher, the defendant Duncan, by means of his radio

broadcasting station, gave and caused to be given public performances and renditions for profit of said musical composition; and the defendant realty company, by means of its radio receiving set and other devices owned and controlled by it, enabled and caused its guests in the LaSalle Hotel to hear said musical production so performed and rendered by said defendant Duncan by means of his radio broadcasting station.

XV. No prearrangement existed between the defendant Duncan and the defendant company with respect to what music should be broadcasted by Duncan or received by the company other than what might be said to be the usual prearrangement between any broadcaster and any person commercially operating a receiving set. The defendant Duncan operated his radio broadcasting station without any connection whatsoever with the company. He selected his own programs and broadcasted them for the benefit of himself and whoever chose to tune in and receive them.

XVI. On May 29, 1928, there was addressed to said defendant company by registered mail a letter, advising it generally of the terms of the Copyright Act (17 USCA § 1 et seq.). Inclosed therewith was a list of the members of the American Society of Composers, Authors, and Publishers. The name of the plaintiff DeSylva, Brown & Henderson, Inc., was included in said list of members. Defendant company was informed that, unless and until license was obtained from said American Society, it should strictly avoid the rendition or performance in its hotel of any musical compositions copyrighted by any member of said society, under any circumstances.

An order pro confesso for failure to answer was entered against the defendant Duncan; later, a final decree was entered granting an injunction and damages against him, and dismissing the bill as to defendant Jewell-LaSalle Realty Company for lack of equity.

Appeal was taken to this court by Gene Buck, as president, et al.

The contention of appellants was that the Jewell-LaSalle Realty Company, through the use of its receiving set and loud speakers on the dates above mentioned, gave a public performance for profit of the musical composition in question within the meaning of 17 USCA § 1(e).

The contentions of the appellee were: (a) That the Jewell-LaSalle Realty Company was not a performer within the meaning of the statute cited; (b) that the alleged performance in the hotel was not "for profit" within the meaning of those words as used in the statute.

This court, being in doubt on the question of "performance" and desiring the instruction of the Supreme Court, certified to that court the following question: Question I. Do the acts of a hotel proprietor, in making available to his guests, through the instrumentality of a radio receiving set and loud speakers installed in his hotel and under his control and for the entertainment of his guests, the hearing of a copyrighted musical composition which has been broadcast from a radio transmitting station, constitute a performance of such composition within the meaning of 17 USCA § 1(e)?

The question certified has now been answered by the Supreme Court in the affirmative. Buck v. Jewell-LaSalle Realty Co., 283 U. S. 191, 51 S. Ct. 410, 75 L. Ed. —.

It having been thus determined that the specified acts of the hotel proprietor constituted a performance, we are of the opinion that the record discloses that the performance was a public one and was for profit. The words "public performance for profit" have received a liberal interpretation. See Herbert v. Shanley Co., 242 U. S. 591, 37 S. Ct. 232, 61 L. Ed. 511; Remick v. Am. Auto. Accessories Co. (C. C. A.) 5 F.(2d) 411, 40 A. L. R. 1511. That the broadcasting of a musical composition constitutes a public performance, see Messager v. British Broadcasting Co., Ltd., 137 L. T. R. 810, [1927] 2 K. B. 543, reversed on another point, [1928] 1 K. B. 660, [1929] A. C. 151.

Furthermore, in the case at bar, the bill alleges " * * * that such renditions and performances were public, and for profit, and for the purposes of profit; that same was for the purpose of making the business of each defendant well and favorably known, and attractive to the public generally, and to encourage the public to engage the respective services and facilities furnished for profit by each defendant, and to pay for the same, for the purpose of ultimate profit of each defendant," and the "statement of evidence" admits that these allegations are true.

It follows from the foregoing that the trial court erred in dismissing the bill as to the defendant Jewell-LaSalle Realty Company.

The decree is reversed in so far as it dismisses the bill as to the defendant Jewell-LaSalle Realty Company, and the cause is re-

manded for further proceedings not inconsistent with the opinion of the Supreme Court hereinabove referred to, and not inconsistent with the views herein expressed.

Costs in this court to be divided equally.