**ASSOCIATED MUSIC PUBLISHERS, Inc.,
v. DEBS MEMORIAL RADIO FUND,
Inc., et al.**

No. 149.

Circuit Court of Appeals, Second Circuit.

April 7, 1944.

A. Walter Socolow, of New York City (A. Walter Socolow and Alexander D. Diamond, both of New York City, of counsel), for defendants-appellants.

Arthur E. Garmaize, of New York City, for plaintiff-appellee.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The plaintiff charged the defendants with infringement by public performance for profit by broadcast of its copyrighted orchestral work entitled "Petite Suite Espagnole" and obtained a summary judgment for an injunction, together with damages, attorney's fees and costs aggregating $378.23.

The defendant, Debs Memorial Fund Inc., owns and operates Radio Station WEVD.

The copyrighted work "Petite Suite Espagnole" consists of four parts "Ausencia" (Serenade), "Habanera", "Noche de Arabia" (Intermezzo), and "Baile Andaluz". The originality of the work, the validity of the copyright, its ownership by the plaintiff, the broadcast over Station WEVD of a portion of the work by means of a phonograph record containing the third part of the composition known as "Noche de Arabia", and the broadcast duration of six minutes are matters which 'have been fully established. It is conceded that Debs Memorial Radio Fund Inc., received no permission from the plaintiff to perform

the musical composition for profit by radio broadcast over Station WEVD. The plaintiff publishes and licenses the performance of serious music. All of the radio networks and in excess of three hundred stations hold licenses for the performance of plaintiff's repertoire.

Debs Memorial Fund Inc., which we shall call "Debs", is a business corporation organized under Article 2 of the Stock Corporation Law, Consol.Laws N.Y. c. 59. Its capital stock consists of 100 shares of common stock without par value and cumulative voting is provided for. The purposes for which it is organized are described in the certificate of incorporation as set forth below.[1] It was organized by nominees of the Forward Association, a New York membership corporation, formed in order to establish a permanent memorial to Eugene V. Debs, pioneer labor leader, and also to promote civic, educational and cultural purposes generally. Its stock was limited to one hundred shares of no par value and was all held by nominees of the Forward Association; its sole business consisted of the ownership and operation of Station WEVD. It adopted by-laws which provided that it should be conducted as a non-profit sharing corporation and that all profits and surplus, arising from the operation of the Station, should

---

[1] (a) To engage in the business of broadcasting and/or radiocasting by means of radio broadcasting machines or any other devices, machinery, or equipment whatsoever. To own, sell, hold, lease, equip, maintain and operate broadcasting and receiving stations and any connections between such stations;

(b) To transmit, send and broadcast over the radio, news, talks, speeches, lectures, musical concerts, plays, theatricals, recitals, programs, revues, readings, reports, signals, and all matter and things of any kind, nature and description whatsoever that may be transmitted, sent, and broadcast by radio;

(c) To apply for, obtain, purchase, or otherwise acquire, and to register, hold, own, use, sell, assign, or otherwise dispose of any and all trademarks, tradenames, processes, formulas, trade secrets, inventions, improvements and devices of all kinds whether secured under letters patent of the United States or of any foreign country, and to use, exercise, develop, assign, or grant licenses in respect thereto, or to otherwise turn to account, any such trade-secrets, trademarks, patents, licenses, processes or formulas;

(d) To purchase or otherwise acquire real estate and leaseholds or any interest therein such as may be necessary and incidental for the purposes hereinbefore expressed; and to own, hold, improve, sell, or encumber the same as may be necessary for the purposes hereinbefore expressed. To purchase personal property of any and all kinds that may be lawfully acquired and held by a business corporation, in particular—shares of stock, mortgages, bonds, merchandise necessary to the purposes hereinbefore expressed, book debts, and claims, copyrights, manuscripts, trademarks, tradenames, grants, patents, patent rights, licenses, concessions, or any other interest whatsoever in real or personal property;

(e) To enter into, make, form and carry out contracts of every sort and kind which may be necessary or convenient for the business of this company, or business of a similar nature with any person, firm, corporation, private, public or municipal, body politic under the government of the United States or any state, territory or county thereof, or any foreign government, so far as, and to the extent that the same be done and performed by corporation organized under the Business Corporation Law.

(f) To do all and everything necessary, suitable and proper for the accomplishment of any of the purposes, or the attainment of any of the objects, or the furtherance of any of the powers hereinbefore set forth, either alone or associated with other corporations, firms or individuals, and to do any other act or acts, thing or things incidental or pertaining to or growing out of or connected with the aforesaid business or powers or any part or parts thereof, provided that the same be not inconsistent with the law under which this corporation is organized.

(g) To borrow money, to issue bonds, debentures, promissory notes, and other obligations secured or unsecured of the corporation from time to time for monies borrowed, or in payment for property acquired, or for any of the other objects or purposes of the corporation, or for any of the objects of its business; to secure the same by mortgage or mortgages or deed or deeds of trust, or pledge or other lien upon any or all property, rights, privileges or franchises of the corporation wheresoever situate or acquired or to be acquired; to sell, pledge, or otherwise dispose of any and all debenture or other bonds, promissory notes and other obligations in such manner and upon such terms as the Board of Directors may deem best.

be used for enlarging and extending the facilities of the Station and for improving the educational and cultural activities thereof.

Prior to 1931 Debs was subsidized by donations solicited from the public and was operated at a deficit; since 1931, the operations have been financed to the extent of $425,000 by advances and donations made by the Forward Association. In 1931 the Forward Association adopted a resolution that; as soon as it should be deemed advisable, the stockholders and directors would take the necessary steps to amend the certificate of incorporation or otherwise to reorganize Debs so that it should become a membership corporation and should use its resources and surplus for the development and extension of radio facilities and other social and civic purposes. This step had not been taken during the period covered by the proof; but no salaries or other compensation, directly or indirectly, were ever "paid to any of the officers, stockholders or directors" of the corporation during the time in question and no dividends were ever declared or paid.

Whatever may be the charter powers of Debs, we may assume that its ultimate objects, as it has been actually conducted, have been philanthropic and educational. In carrying out its purposes it has sought immediate commercial profit, even though the reason for doing this has been to forward its philanthropic program, and to obtain funds to achieve its objects it has given broadcasting time to advertisers. At one period thirty-three per cent of the time of the Station was leased to paid advertisers, including broadcasting Saturday and Sunday nights from 6 to 8 P. M. Alexander Kahn, the treasurer of Debs, stated in his deposition, that in order to maintain Debs as a cultural institution, from an educational as well as from a musical point of view, it has been its policy to reserve as much time for such purposes as is possible "after the operating expenses have been covered and a reasonable reserve for contingencies."

The broadcast in the case at bar, which was held by the District Court to infringe, was not a broadcast given to paid advertisers, but was a socalled "sustaining program" put on by WEVD, as Mr. Kahn said, "to give our listeners service." In this connection Mr. Kahn also stated that according to his experience sustaining programs increased the number of listeners to the Station. By increasing the listeners it seems evident that sustaining programs tended to increase or at least to maintain WEVD as a Station desirable for paid advertising.

The Copyright Act, 17 U.S.C.A. § 1 (e), provides that:

"Any person entitled thereto, upon complying with the provisions of this title, shall have the exclusive right * * * (e) To perform the copyrighted work publicly for profit if it be a musical composition and for the purpose of public performance for profit."

From the foregoing it is evident that the monopoly given the copyright owner is only to perform his work "for profit". Liability was imposed on the defendants by the District Court upon the theory that the broadcast of the plaintiff's music was "for profit" because the sustaining programs though bringing in no direct revenue help "to build up listener appeal, and in that way provide an inducement to advertisers."

The defendants have appealed from the judgment awarding an injunction and damages for infringement by broadcasting "Noche de Arabia". We think that the decision of the District Court was right and should be affirmed.

Adolph Held, the president of the corporate defendant Debs, said in his affidavit in opposition to the plaintiff's motion for summary judgment:

"* * * Despite the fact that Station WEVD is licensed as a part-time station only * * * the operating expenses of Debs are greater than its supporters are able to afford. To make up such additional funds for its general purposes, Debs derives some revenue from a limited use of its facilities by advertisers.

"That portion of the broadcast facilities and operating time of Station WEVD * * * required solely for the receipt of revenue for the operating expenses of Station WEVD is made available for advertising purposes upon payment of fees therefor to Debs. The fees derived from such advertising programs aggregate such amounts as are necessary to meet normal and reasonable operating expenses of Station WEVD. * * * The result of such advertising revenue is merely to defray the operating cost of Station WEVD rather than to provide gain or profit and certainly does not constitute Debs as a competitor-

of commercial broadcast stations which invariably operate on a totally dissimilar program policy".

In the deposition of Mr. Kahn it was said that the time of the station broadcasts is divided into three classes—for advertising programs, for sustaining programs, and for free time for institutions.

 It seems clear that an important radio station which allots one-third of its time to paying advertisers and thus supports a musical program in which a substantial part of a copyrighted musical work is rendered is engaged in a performance for profit, as to which the copyright owner has an exclusive monopoly.

The fees for advertising are obtained in order to aid the broadcasting station to pay its expenses and repay the advances to it by the Forward Association. The "sustaining" programs are similarly broadcast in order to maintain and further build up the listening audience and thus furnish the field from which the paying advertisers may reap a profit. It can make no difference that the ultimate purposes of the corporate defendant were charitable or educational. Both in the advertising and sustaining programs Debs was engaged in an enterprise which resulted in profit to the advertisers and to an increment to its own treasury whereby it might repay its indebtedness to Forward Association and avoid an annual deficit. There seems to be no more distinction between the "sustaining" programs than was found to exist in Herbert v. Shanley Co., 242 U.S. 591, 37 S.Ct. 232, 61 L.Ed. 511, and Jerome H. Remick v. American Automobile Accessories Co., 6 Cir., 5 F.2d 411, 40 A.L.R. 1511. To be sure in those cases the infringing defendants were engaged in commercial enterprises and the broadcasts, though given without direct charge to the defendants' customers, were in aid of the general business of the defendants. In the case at bar there was likewise an immediate profit from advertising programs both to the advertisers and to the corporate defendant. The statute awards copyright protection in case of the performance of a musical composition for profit. It is unimportant whether a profit went to Debs or to its employes or to the advertisers. The performance was for profit and the owner had the statutory right to preclude each and all of them from reaping where they had not sown.

There can be no doubt that the individual defendant Henry Greenfield, who was personally paid for his services in managing the Station and exercised his own judgment in choosing music to be broadcast, was as responsible as an infringer or contributory infringer as the corporate defendant.

It was argued that a "fair use" permitted the use of the musical copyright. There can be no doubt that the portion of the plaintiff's composition which was broadcast which amounted to about a quarter of his entire work and was reproduced to aid in building up a listening audience does not come within the definition of "fair use".

For the foregoing reasons the judgment is affirmed.