334 F.2d 303
 142 U.S.P.Q. 54
 CHAPPELL & CO., Inc., and Frank Music Corp., Appellees,
v.
MIDDLETOWN FARMERS MARKET & AUCTION CO., Appellant.
SHAPIRO, BERNSTEIN & CO., Inc. and Edwin H. Morris &
Company, Inc., Appellees,
v.
MIDDLETOWN FARMERS MARKET & AUCTION CO., Appellant.
Matt DUBEY and Harold Karr, Appellees,
v.
MIDDLETOWN FARMERS MARKET & AUCTION CO., Appellant.
 Nos. 14676-14678.
 United States Court of Appeals Third Circuit.
 Argued March 6, 1964.
Decided June 26, 1964.
 
 Ronald M. Katzman, Harrisburg, Pa. (Goldberg, Evans & Katzman, Harrisburg, Pa., Harold Tull, Harrisburg, Pa., on the brief), for appellant.
 Herman Finkelstein, New York City (Charles H. Welles, 3d, Welles, Mackie & McGrath, Scranton, Pa., Bernard Korman, New York City, of counsel, on the brief), for appellees.
 Before McLAUGHLIN and FORMAN, Circuit Judges, and LEAHY, District judge.
 McLAUGHLIN, Circuit Judge.
 
 
 1
 This is a consolidated appeal from a judgment of copyright infringement under Section 1(e) of the Copyright Act. 17 U.S.C. 1(e) (1958).
 
 
 2
 The defendant, Middletown Farmers Market and Auction Co. (Middletown) is a Pennsylvania corporation, operating a Merchandise Mart in Middletown, Pennsylvania. Mid-City Trading Company is the proprietor and lessee of the music department at the Mart, under an arrangement whereby Middletown advertises the merchandise sold by Mid-City, through newspaper advertisements and sales promotion over Middletown's loud speaker system.
 
 
 3
 Broadcasts over this system originate in the central office of Middletown, and are carried to some fifty-eight speakers located on the premises and in the parking lot. On certain stipulated occasions, Middletown played, over this loud speaker system, the phonograph records of musical compositions, the copyrights to which were owned by the plaintiffs appellees.[1] This was done without license or permission of the copyright owners or ASCAP, American Society of Composers, Authors and Publishers, to whom a nonexclusive licensing right was granted.
 
 
 4
 The defendant contended that these renditions were permissible under the Copyright Act because directed to the promotion of the records for the benefit of the copyright owners; that they amounted to 'advertisement' not 'public performance for profit'.
 
 
 5
 The plaintiffs argued that these records were played throughout the store under circumstances which made their rendition a public performance for profit within Section 1(e) of the Copyright Act. 17 U.S.C. 1(e) (1958).
 
 
 6
 These consolidated cases were tried before Judge Follmer without a jury and judgment was rendered for the plaintiffs in each case, in the amount of $250 for each infringement, and $200 in attorney's fees for each plaintiff plus costs. Defendants were further enjoined from performing publicly the musical compositions involved.
 
 
 7
 At the trial below, it was stipulated by the parties that the musical compositions involved were played over the defendant's loud speaker system on the dates alleged; it was further uncontradicted that the broadcast of these compositions emanated from the central office of the defendant, not the music department.
 
 
 8
 As to whether announcements were made, promoting the sale of the records played, there was conflicting testimony. The manager of the Mart said announcements promoting the sale of the records were made from time to time. An investigator for ASCAP and his wife testified they heard no such announcements at the Mart. The trial judge, however, left this factual issue unresolved, and found only that these compositions were 'publicly performed * * * for the entertainment and amusement of patrons attending such place and to make such place of business an attractive place for the patronage of the general public.' Finding No. 4.
 
 
 9
 This finding has support in the evidence and cannot be said to have been clearly erroneous. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948); R. M. Palmer Company v. Luden's, Inc., 236 F.2d 496, 498 (3 Cir. 1956); and it is dispositive, if the rendition of these musical compositions in the manner described is a 'public performance for profit' within Section 1(e) of the Copyright Act.
 
 
 10
 Section 1(e) of the Copyright Act confers two monopolies on the copyright owner, that of reproduction of the musical composition by mechanical means and that of giving public performance for profit. Jewell-LaSalle Realty Co. v. Buck, 283 U.S. 202, 51 S.Ct. 407, 75 L.Ed. 978 (1931). See S.Rep.No. 1108, 60 Cong. 2d Sess. P. 9 (1909); H.Rep.No. 2222, 60 Cong. 2d Sess. P. 9 (1909). In enacting the Copyright Act, Congress sought to give the composer or copyright owner control, in accordance with the provisions of the bill, over 'the manufacture and use of such devices' (mechanical reproductions) S.Rep.No. 1108, supra; H.Rep.No. 2222, supra.
 
 
 11
 The authorization by the copyright owners to record the musical compositions had been given in this case, and the copyright owners could not restrict the sale of the mechanical reproduction, i.e., the phonograph records (17 U.S.C. 27 (1958)), though under Section 1(e) they were entitled to specified royalties for their manufacture. But while the record itself is thus free from further contributions to the copyright, the use of the recordings for a public performance for profit is still reserved to the copyright owners. 17 U.S.C. 1(e) (1958). The surrender of one monopoly (the right to make mechanical reproductions) does not carry with it the right to publicly perform the copyrighted musical composition through a phonograph recording thereof. Cf. Berlin, Inc. v. Daigle, 31 F.2d 832, 834-835 (5 Cir. 1929); Interstate Hotel Co. v. Remick Music Corp., 157 F.2d 744 (8 Cir. 1947).
 
 
 12
 It follows that while the statute provides that once possession of a copy of the copyrighted musical composition is lawfully obtained, (whether in the form of phonograph record or sheet music), there shall be no restriction on its transfer-- this cannot be read to permit 'public performance for profit' to bring about its transfer or sale.
 
 
 13
 There was testimony by the manager of the Mart that the playing of the records induced sales; and that this was their purpose in playing them. There was, however, no finding by the trial judge that these renditions were or were not connected with the sales promotions of the defendant: so that the argument of the plaintiffs that the defendants publicly performed the musical composition for profit 'under the guise of sales promotions' is inappropriate. It may be true that these renditions served a dual purpose, 'sales promotion' and 'entertainment and amusement of the customers of the Mart'; but it would seem to us that Sections 1(e) and 27 of the Copyright Act do not authorize the public performance for profit of a copyrighted musical composition even in connection with the sale of a mechanical reproduction of the work. Otherwise, a surrender of one monopoly would severely compromise the monopoly reserved, i.e., 'the right to publicly perform for profit.' So that whether the playing of the records was or was not connected with their sales promotion (the factual issue the trial judge did not decide), if they constituted public performances for profit within Section 1(e), plaintiff's copyrights were infringed. See M. Witmark & Sons v. L. Bamberger & Co., 291 F. 776 (D.N.J.1923).
 
 
 14
 The trial judge affirmatively found that the musical compositions involved were 'publicly performed for profit * * * for the entertainment and amusement of patrons attending' (The Mart) and 'to make such place of business an attractive place for the patronage of the general public.' Finding No. 4. We believe this factual finding was sufficient basis for his concluding that the renditions in this case amounted to 'public performance for profit' within 1(e) of the Copyright Act.
 
 
 15
 The atmosphere created by the playing of recordings made shopping at the Mart more pleasurable and attractive to the patrons. Though this was not of direct pecuniary benefit, it was 'for profit' to the degree that it was commercially beneficial to the Mart to have an attractive shopping atmosphere. It is against the 'commercial, as distinguished from a purely philanthropic public use of another's composition' that the statute is directed. Remick & Co. v. American Automobile Accessories Co., 5 F.2d 411 (6 Cir. 1925). See Herbert v. Shanley, 242 U.S. 591, 594-595, 37 S.Ct. 232, 61 L.Ed. 511 (1917). So long as there can be discerned a 'material, tangible, commercial profit' in the rendition of musical compositions, it is for profit within Section 1(e). See Conference Rep.No. 2470, 82 Cong.2d Sess. (1952); U.S.Code Cong. & Adm.News, 1952, P. 2310. See M. Witmark & Sons v. L. Bamberger & Co.,291 F. 776 (D.N.J.1923).
 
 
 16
 Inasmuch as the defendant, in playing the recordings, was addressing a considerable audience, in a large public mart, it must be regarded as a public rather than private performance. Remick & Co. v. American Automobile Accessories Corp., 5 F.2d 411, 412 (6 Cir. 1925). See Harms, Inc. v. Sansom House Enterprises, Inc., 162 F.Supp. 129 (E.D.Pa.1958) affirmed Leo Feist, Inc. v. Lew Tendler Tavern, Inc., 267 F.2d 494 (3 Cir. 1959). Under the accepted decisional law it is clear that the playing of the records in the complained of manner was a public performance for profit within Section 1(e).
 
 
 17
 Finally, the defendant-appellant contests the propriety of allocating to each party plaintiff a $200 attorney's fee. It does not dispute that under Section 116 of the Copyright Act, an award of attorney fees to the prevailing party is authorized. Its protest goes to the amount awarded.
 
 
 18
 The allowance of attorney's fees in copyright infringement cases has traditionally been a matter peculiarly within the discretion of the trial judge since he is in a better position to know the extent and value of professional services rendered. Harms, Inc. v. Sansom House Enterprises, 162 F.Supp. 129 (E.D.Pa.1958) affirmed Leo Feist, Inc. v. Lew Tendler Tavern, Inc., 267 F.2d 494 (3 Cir. 1959).
 
 
 19
 In this instance, there were five separate plaintiffs and five infringements alleged and found, with a single law firm representing all the plaintiffs. The records in these actions reveal three sets of pleadings, pre-trial discovery, and a consolidated trial with several hotly contested factual issues. Our more remote view of the professional services rendered to the plaintiffs as a whole, does not convince us that the total award of $1,000 in attorney's fees was unreasonable or an abuse of discretion by the trial judge.
 
 
 20
 The judgment of the district court will be affirmed.
 
 
 
 [1]
 Chappell and Co., Inc., is the copyright owner of the musical composition 'Where or When', and Frank Music Corp. is the copyright owner of 'Hernando's Hideaway'. These two pieces were played over the loud speaker system of the defendant on February 25, 1961
 Shapiro, Bernstein & Co., Inc. is the copyright proprietor of 'Sweet Sue-- Just You' and Edwin H. Morris & Company, Inc. is the copyright proprietor of 'Tenderly'. These musical compositions were played in the manner described at defendant's Mart on April 2, 1960.
 Matt Dubey and Harold Karr are the joint owners of the copyright of 'Mutual Admiration Society'. This was played in the manner described at defendant's Mart on February 26, 1961.