By original petition filed in the District Court of Palo Pinto County the appellee sought to restrain appellant J. F. Lewis and his agents from entering its passenger trains for the purpose of soliciting the patronage of its passengers in behalf of appellant's transfer line at Mineral Wells. The agreed facts upon which the case was submitted to the district judge, and upon which we are asked to revise his judgment in perpetuating the injunction against appellant, are in substance as follows: The plaintiff is a corporation and common carrier, operating a line of railroad between Weatherford and Mineral Wells. Mineral Wells is a town of about 3000 inhabitants, and a place noted as a health resort, to which place a great many persons travel and go to and from during the various seasons of the year. The defendant Lewis resides in Mineral Wells and owns, controls and has controlled and operated for more than a year, a number of hacks, carriages, drays and wagons in the conduct of the transfer and livery business, and has been, and is now, engaged in the carrying on of such business. The defendants Thompson and Heater were in his employ soliciting business for him, and were acting under his direction and control.
At the time of the filing of plaintiff's petition in this case, and for more than a year prior thereto, plaintiff had established rules and regulations *Page 49 
lations, by which only one person or transfer company was permitted to travel upon its trains for the purpose of soliciting transfer business from the passengers on said trains. That is, only one person or transfer company was allowed to travel upon said trains and solicit the patronage of the passengers for the carrying of persons and their baggage, or either, from its depot in Mineral Wells to any point in the city where such persons might desire to go or have their baggage sent. The plaintiff had authorized and permitted one T. J. Green, a competent and reliable person engaged in such transfer business at Mineral Wells, and possessed of ample and sufficient facilities for such services, to solicit employment from and contract with passengers on its cars and trains while such passengers were being cared for by plaintiff, and the plaintiff had excluded all other persons soliciting such transfer business from or contracting with passengers while being carried by plaintiff. Frequently prior to the institution of this proceeding defendant Lewis and his said agents have demanded the right to be carried upon plaintiff's trains for the purpose of soliciting and contracting with plaintiff's passengers with reference to the transportation of such persons and their baggage, or either, after their arrival at plaintiff's depot at Mineral Wells.
Plaintiff at all such times refused to give to said Lewis and his agents or any one of them, any authority or permission to travel upon said trains for such purposes. The defendant Lewis and his employes have at all times insisted that when he or either of them purchased a ticket, that he or any of said employes had the right to travel upon any of the plaintiff's passenger trains and solicit the patronage of its passengers with reference to the transportation of such passengers or their baggage. The plaintiff has at all times denied this asserted right, and had advised Lewis that it had granted the exclusive privilege of doing this business to the said T. J. Green. Prior to the filing of plaintiff's complaint the defendants on many occasions had purchased tickets and traveled upon the cars of plaintiff and solicited the patronage of the passengers, the plaintiff at all times endeavoring to prevent the same. Because of these demands and refusals several altercations had arisen between the employes of plaintiff and the employes of said Lewis. The conductor in charge of plaintiff's train had often forbidden Lewis and his employes to solicit on the passenger train and had threatened and attempted to prohibit them from doing so, in consequence of which civil suits for damages against plaintiff had resulted, which were pending in the District Court of Palo Pinto County at the time of the institution of this proceeding. Both Lewis and Green are engaged in carrying on the transfer business at Mineral Wells, and each has the proper facilities and equipment for the proper and safe conduct of the transfer business.
One of appellant's assignments of error, though not the first presented in the brief, is that the court erred in perpetuating the injunction, because the rule or regulation by the appellee, whereby the exclusive privilege of soliciting the patronage of its passengers was given to Green, creates a monopoly and is violative of the anti-trust law of this State. *Page 50 
That portion of the anti-trust law which is germane to the point here made is as follows: "A trust is a combination of capital, skill or acts by two or more persons, firms, corporations or association of persons, or either two or more of them for either, any, or all of the following purposes: 1. * * * To create or carry out restriction in the free pursuit of any business authorized or permitted by the laws of this State." It is, we think, sufficient answer to this contention, that the rule or regulation of appellees by which Green was permitted to solicit the patronage of its passengers to the exclusion of appellant did not "create or carry out restrictions in the free pursuit of any business authorized or permitted by the laws of this State," because the only restriction imposed is with respect to the transaction of appellant's business on appellee's passenger trains, which he is nowhere authorized or permitted by the laws of this State to engage in. It is therefore not a restriction upon the free pursuit of his lawful business. In the sense that the regulation prevents appellant from securing the patronage of appellee's passengers, it may be said to be a restriction upon his business. But the least reflection will show that if this construction of the law were to be adopted a very large per cent of the everyday contracts in the business world, such as those of leasing, of agency, of service and the like, would be reprobated, a result never dreamed of by the legislators who enacted the statute. If appellee is to be denied the relief prayed for, it must be upon other grounds than that asserted in this assignment.
Under the only other remaining assignment of error, the following propositions are asserted: "1. A railroad company has no right to make unreasonable rules controlling the conduct of the passengers on their trains. 2. A railroad company has no right to make a rule or regulation whereby it gives to one individual exclusive rights upon its trains and excludes others from exercising the same rights, where the business engaged in by the said two parties is one in its very nature involving public interests, and is in the nature of a necessity for the convenience and welfare of the passengers; especially where said two parties are public carriers and equally well fitted for the business in which they are both engaged." We readily assent to the proposition that a railroad company has no right to make unreasonable rules controlling the conduct of its passengers while on its trains, and we as readily recognize the converse of this to be true, that is, that a railroad company has the right to make all reasonable rules and regulations concerning the conduct of its passengers. For the present it is sufficient to say, we think the rule or regulation pleaded by appellee, and shown by the agreed facts, is both reasonable and salutary. The question presented by the second proposition seems never to have arisen in this State, but has been much discussed elsewhere.
In an early New York case, Barney v. Oyster Bay and H. Steamboat Co., 67 N.Y. 301, it is said: "The carrier, however, may make reasonable rules and regulations for the conduct of his business, and when *Page 51 
they are made known passengers are bound to observe them. He may carry on in connection with his business of carrier any other business, and may use his property in any way he may choose to promote his interest, not inconsistent with the duty he owes to passengers. The vessel or vehicle which he uses is his own, and except to the extent to which he has devoted it to public use, by the business in which he has engaged, he may manage and control it for his own profit and advantage to the exclusion of all other persons. For instance, the sale of books, papers or refreshments are common incidents to the business of a carrier by certain modes of conveyance, and the carrier may avail himself of the opportunity which his business gives him to supply the special wants of travelers in these and other respects, and appropriate to himself the profits of the business, and exclude third persons from entering the car or vessel to carry on the same business, in opposition to him. He may grant or refuse the privilege at his option. In this no right of the passenger is invaded. The passenger has the right to be carried and to enjoy equal privileges with others, or at least to be exempt from unjust or offensive discrimination in favor of other passengers. But he has no right to demand that in matters not falling within the contract of carriage the carrier shall' surrender in any respect rights incident to his ownership of his property. So also a carrier may establish for the convenience of passengers and for his own profit, on his car or vessel, an agency for the delivery of baggage of passengers and exclude all other persons from entering to solicit or receive orders from passengers in competition with the agency established by him. This is in no just sense a monopoly. It is simply saving to the carrier a legitimate advantage which his position and business give him."
In Kates v. Atlanta Baggage and Cab Co. (Ga.), 34 S.E. Rep., 372, the question came before the Supreme Court of Georgia, where the following language was used: "It is claimed that the grant of the enumerated privileges to the cab company and the refusal of them to petitioner is the exercise of an undue preference on the part of the carrier against the business of petitioner, and that such grant and refusal established a monopoly which is forbidden by law." After reviewing a number of authorities, among others the case of Fluker v. Railway Co.,81 Ga. 461, 8 S.E. Rep., 529, the court goes on to say: "The case clearly rules the principle that a railroad company has the right to exclude from its premises persons going thereon for the purpose of transacting private business, and a second proposition is equally as clearly stated to be that the privilege of doing so may be granted to one and refused to another, without violating any principle of law which governs the conduct of carriers and regulates their duty to the public. * * * In the very nature of things it would be impossible for a railroad company to permit the agents of all baggage or express companies to enter its trains to solicit the transportation of baggage, and yet, because of such impossibility, it would hardly be fair to the traveling public to refuse to permit the agent of any to do so." *Page 52 
The decision in Godbout v. St. Paul Union Depot Co., 47 Law. Rep. Ann., 532, 81 N.W. Rep., 835, is to the effect that a common carrier may make such rules and regulations as it deems necessary for the control of ifs business within its depot building, and may grant special and exclusive privileges to hackmen to solicit business, provided such rules and regulations are reasonable and conduce to the comfort and convenience of its patrons. It is there said: "If this arrangement is a reasonable and proper one for such passengers and patrons and concerns their interests, and does not tend to deprive them of proper opportunity to control their action after leaving the depot, then there is no ground for complaint. There is no evidence in the case tending to show that the arrangement provided by the contract is unreasonable, or that it in any respect interferes with the rights of the traveling public. On the other hand, the court below found as a fact that the contract conduced to the convenience and comfort of the public and to the orderly performance of its business by defendant. If appellant were admitted to the building to solicit business, then all hackmen would have to be admitted. The presence of soliciting agents without restrictions would interfere with the comfort, welfare and convenience of the public."
To the like effect is the decision of the United States Circuit Court of Appeals for the Seventh Circuit in Donovan v. Pennsylvania Co., 61 Law. Rep. Ann., 140, where practically all the authorities on the question, pro and con, are cited. We quote from that decision the following: "The asserted right of the hackmen necessarily postulates a correlative duty on the part of the railroad company. The company owes the duty to all persons, without discrimination, to carry them on equal terms of service and compensation. As a common carrier of passengers, the company must provide facilities for the reception, carriage and discharge of its passengers, and must establish rights which are available equally to all who desire to become passengers. But the company does not owe to its passengers the duty to provide on its trains the opportunities for them to purchase newspapers, books, fruit and the like, or to employ the service of a stenographer, or of a barber, or to buy cab or express tickets. Much less does it owe the duty to anyone to permit him to pursue his vocation on the trains."
The rule announced in these cases commends itself to our consideration. There is not wanting authority, however, for a different holding. There are many cases which deny the right of a railroad company to enter into an arrangement whereby the right of its passengers to choose their own transfer agents after leaving the railway company's premises is controlled. But this may be, and is, we think, a different question from the one presented in this case, and the authorities referred to need not be discussed. Ordinarily, all hackmen alike have the common right of soliciting the patronage of railroad passengers, but this common right may be defeated by the railroad company by the establishment of a reasonable rule or regulation with respect to its passengers while they are in such company's charge. At the point where the railroad company's *Page 53 
right to maintain its rule or regulation ends, this common right of the transfer companies begins. It is not contended in this case, neither indeed can it be, that appellee did not have the right to exclude all hackmen from its trains. Our statutes have never declared railroad companies common carriers of transfer companies. But the contention mainly is that since appellee has not seen fit to exclude all, but has permitted Green and his agents to canvass its passengers, it therefore lost all right to exclude others. But this contention can not be maintained. A properly regulated transfer service on passenger trains in this day is not only a convenience but practically a necessity. The means adopted by appellee in this case, or some similar method, is practically the only plan by which such business can be regulated at all. To admit all transfer agents would amount not only to an inconvenience to the traveling public, but would render it well nigh impossible to establish any rules or regulations in regard to the business whatever. To hold as appellant insists in this case would be nothing short of judicial legislation. If the rule or regulation adopted by a railway company is unreasonable, the court would doubtless afford relief, otherwise the question is one for the legislative and not the judicial branch of the government. The rule or regulation in the present case seems to be a reasonable one, and one which in no just sense interferes with any right of appellant.
The judgment of the District Court perpetuating the injunction against appellant and his agents is therefore in all things affirmed.
Affirmed.
Writ of error refused. *Page 54