## NATIONAL EXHIBITION CO. v. TELE-FLASH, Inc., et al.

District Court, S. D. New York.
Feb. 21, 1936.

Leo J. Bondy, of New York City (Leo J. Bondy and J. Norman Lewis, both of New York City, of counsel), for plaintiff.

Cravath, deGersdorff, Swaine & Wood, of New York City (Bruce Bromley, Thomas E. McEntegart and Albert R. Connelly, all of New York City, of counsel), for defendants Morning Telegraph, Inc., and Morning Telegraph Sport News, Inc.

CAFFEY, District Judge.

The bill does not allege and, at the oral argument on February 14, plaintiff's counsel said he did not claim that defendants are insolvent or financially irresponsible. I was in great doubt whether the bill states a cause of action. For these reasons, as was then announced, an injunction pendente lite was refused.

Two defendants move to dismiss the bill on the ground that it fails to state a cause of action as against them. The question raised is somewhat novel and is interesting. If time were available, I should like to examine into it with deliberation and to discuss it thoroughly. I must content myself, however, with reading the principal authorities and making a rather general statement.

What is complained of is dissemination over telephone wires to groups of listeners, gathered at various distances from the scene of the game, of descriptions, play by play, of the plays as they occur during the progress of baseball games (paragraphs 17 and 22). The plaintiff is ignorant of the method by which defendants obtain news of the games (paragraphs 22, 32) and the distribution is without its consent (paragraphs 22, 29 and 32). Admission to the grounds, where the games are conducted, is by tickets (paragraphs 9, 11 and 12). What are the terms of the tickets is not disclosed; nor is there any allegation that these prohibit or contain any limitation upon a ticket holder broadcasting, play by play, his own account of what is transpiring within his view; nor is it stated that the broadcasting is done by a ticket holder or by one who is on the premises of the plaintiff or even that the information concerning a game, which is relayed to telephone listeners, is secured by

or from one who is within the plaintiff's enclosure where the game occurs.

The plaintiff predicates its cause of action wholly on the assertion that it has an exclusive property right to news of the game while it is going on (paragraphs 10, 12, 14, 15 and 32). This averment, however, is obviously a mere conclusion. I have heard no clear or definite theory on which such a right rests. Is there a basis for the right? If so, what is it?

In the first place, it is not grounded on contract. Unless perhaps ticket holders supplied the information broadcasted, there was no possible contractual relation between the plaintiff and those charged with doing it injury. As already pointed out, even if ticket holders were the source of news about the plays, the tickets themselves are not shown to have contained any notice or statement of objection to the doing of what was done. A ticket was a complete license to see the game. What is there to prevent a man from telling in his own way, what he saw and telling it when and in the form he chose? There has been no convincing answer to this inquiry.

In the second place, as the pleading is now framed, it does not appear that control of plaintiff's grounds has been interfered with by the defendants. I take it that if a continuing trespass were shown, the bill would be good. At best, however, we are left to speculate as to how or when or by whom the distributed news was initiated. That is not enough to sustain a recovery.

In the third place, unfair competition is invoked. As it seems to me, however, this begs the question. What the plaintiff owned was the game; or rather it owned or employed the instrumentalities through which the game was produced. On the other hand, what the defendants conveyed to their listeners, through the voices of themselves or their representatives, was the creation of their own faculties; they told what they had seen. It is not sufficient to constitute unfair competition that the plaintiff merely had title to the game. In addition, it must have title to an exclusive right to describe it, play by play, while in progress. The very problem we are trying to solve is whether the plaintiff has any such title. Plainly, as I see it, there was no competition, much less unfair competition, between the game itself and the words concerning it used by the defendants. Unless the plaintiff had the exclusive right of description, I fail to

see any wrong done to it by the defendants in giving their own description of what they had seen. I think International News Service v. Associated Press, 248 U.S. 215, 39 S. Ct. 68, 63 L.Ed. 211, 2 A.L.R. 293, does not help the plaintiff on the unfair competition aspect of the controversy. There the subject of litigation was produced entirely by the plaintiff's efforts and the competition between what the parties made use of was immediate, direct and, during the period when the articles involved (news items) had value, was continuous.

In the fourth place, it is said, and it will be assumed, that the plaintiff can no longer derive, as heretofore it has derived, income from the Western Union Telegraph Company which, previous to the intervention of the defendants' broadcasting, paid the plaintiff for the privilege of announcing the results of innings (paragraphs 28 and 30) and that ticket sales are reduced because telephone listeners, who would otherwise attend, prefer to get the news in places of comfort away from the grounds (paragraph 31). In other words, plaintiff has been damaged by the broadcasting. Damage alone, however, does not create a cause of action. It is elementary that before there can be a recovery, there must be the violation of a right.

In the rather obscure condition in which the bill leaves its reader, I confess my inability to put into precise language a statement of any demonstrated right of the plaintiff which has been infringed by the defendants.

I agree with plaintiff's counsel that new situations demand new definitions of rights. It is thus that the law grows. Nevertheless, these new definitions are but new applications of existing principles; new forms for the expression of what is old.

I think none of the decisions cited by the plaintiff, which I have examined, support its position.

What has been held to be property or quasi-property, the use and distribution of which by defendants should be enjoined, were (1) quotations or prices, collected by the plaintiff board of trade, on sales, made to each other by its members, of commodities for future delivery, which quotations the defendants could get only through known breach of the terms of stipulations on the faith of which they were communicated by the plaintiff (Board of Trade of City of Chicago v. Christie G. & S. Co., 198

490

U.S. 236, 25 S.Ct. 637, 49 L.Ed. 1031. See, also, Hunt v. New York Cotton Exchange, 205 U.S. 322, 27 S.Ct. 529, 51 L.Ed. 821, and Moore v. New York Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750, 45 A.L.R. 1370); (2) current news gathered, at great expense, by the industry of the plaintiff, designed and put into shape by the plaintiff for quick publication in newspapers while fresh and for which the newspaper publishers paid the plaintiff (International News Service v. Associated Press, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211, 2 A.L.R. 293), though the decision turned primarily on the issue of unfair competition,—an element whose presence in the case at bar is not established; and (3) the name of a radio announcer which through frequent use had acquired value and the script especially devised to be employed in broadcasting over the radio (Uproar Co. v. National Broadcasting Co., D.C., 8 F.Supp. 358).

For the sake of argument let it be conceded that the bill makes a border line case. On the other hand, when the conclusions set out in the bill are (as they must be) disregarded, I am not persuaded that, on the facts, a cause of action is stated. Of necessity the defendants acquired knowledge concerning the game, as it proceeded, in one or the other of two ways. The observations were made either while they or their representatives were physically on the premises of the plaintiff or while they were outside the premises. If within the plaintiff's grounds, the inference is that they were there by license of the plaintiff. If so, it does not appear that the plaintiff prescribed on or in connection with admission tickets any prohibition against the ticket holder making such use as he pleased of what he saw. It is a matter of common knowledge that, however variant may be the qualities of excellence between spectators, any average attendant at a baseball game can intelligently relate in conversation what occurred before his eyes, play by play. In the present form of the pleading there is no showing that any particular art is involved. If, however, what the defendants distributed was the fruit of what they saw while wholly outside the plaintiff's grounds, I feel that they were free to convey this at will to telephone listeners. In so far as I read the authorities, I find nothing to the contrary.

Motion to dismiss the bill granted, with leave to the plaintiff to amend in twenty days (or within such other period as counsel may agree on or may be later fixed by the court on application) after service of a copy of the order hereon.

Settle order on two days' notice.