TWENTIETH CENTURY SPORTING CLUB, INC., and Others, Plaintiffs, *v.* TRANSRADIO PRESS SERVICE, INC., and Another, Defendants.

Supreme Court, Special Term, New York County, August 30, 1937.

*Cravath, deGersdorff, Swain & Wood [Bruce Bromley* of counsel], for the plaintiffs.

*Isaac W. Digges,* for the defendants.

PECORA, J.   The plaintiffs move for an injunction *pendente lite* to restrain the defendants and their agents from interfering with the exclusive broadcasting rights of the plaintiffs, National Broad-

casting Company, Inc., and Arthur Kudner, Inc., to broadcast a description of a certain boxing exhibition between Joseph Louis and Thomas Farr, which is to be held at the Yankee Stadium on the evening of Monday, August 30, 1937, or on some adjourned date thereof.

The plaintiffs Twentieth Century Sporting Club, Inc., and Michael Jacobs, as the promoters of the exhibition, have granted to the plaintiff National Broadcasting Company the sole and exclusive right to broadcast over the radio a round by round description of said exhibition from the ringside. The National Broadcasting Company in turn has allotted the time on its broadcasting facilities to the Buick Company through its advertising agency. By virtue of these contracts the Buick Company has publicly announced that it was sponsoring the exclusive broadcast of the boxing exhibition.

The defendants are engaged in the business of supplying news to certain broadcasting stations and others. The defendants have been informed by the plaintiffs, or some of them, of the aforesaid arrangements for an exclusive broadcasting of the exhibition.

The plaintiffs alleged that the defendants have notified their radio broadcasting station customers that they (the defendants) will give " up to the minute descriptions from the ringside on the night of the fight by Transradio sports writers;" that such description " will tell what is happening minute by minute throughout the bout, detailing all the important punches, etc." Upon receiving further notice from the plaintiffs respecting their arrangements for the exclusive broadcasting of the exhibition, the defendants sent another communication to their customers stating: " Transradio coverage will consist of a running account of the fight while it is in progress. Each round will be covered as rapidly as it is mechanically possible. This service must not be represented by broadcasting clients to be a ringside description of the fight or a blow by blow description of the fight."

Upon the oral argument of this motion the court requested counsel for defendants to submit to the court and to the plaintiffs' attorneys the plan by which defendants intended to give " the running account of the fight while it is in progress." In a letter received from defendants' attorney this plan is referred to as follows: " It is the plan of the defendants, unless otherwise ordered by this court, to obtain tips from the ringside broadcast as to the facts of the progress of the fight and to authenticate them by independent investigation by newsgathering representatives of defendants located at vantage points outside the stadium but within view of the bout."

Obtaining "tips" from the broadcast of plaintiffs would inevitably involve the use and the adoption by paraphrasing, etc., of the facts obtained from the broadcasting by plaintiffs. This becomes readily apparent from the avowed purpose of defendants to rebroadcast the description of the exhibition without waiting for the termination thereof. Obviously such action by defendants would constitute an unlawful appropriation of the exclusive property rights of the plaintiffs. The defendants must be deemed to be competing with the plaintiffs in the rendition of such broadcast. Even though there may have been a question as to whether newspapers and radio broadcasters are competitors (resolved in the affirmative in *Associated Press* v. *Kvos, Inc.*, 80 F. [2d] 575 [C. C. A., 9th Circ.]; revd. on jurisdictional grounds, 299 U. S. 269), there can be no doubt that the service of the defendant in supplying news to broadcasting stations would constitute them competitors of the plaintiffs to the extent and for the purpose of broadcasting the exhibition. By appropriating or utilizing the whole or the substance of the plaintiffs' broadcast the defendants would be enabled to derive profits from the exhibition without having expended any time, labor and money for the presentation of such exhibition. It is to be borne in mind that this exhibition will only be possible as a result of an expenditure of considerable time, labor and money by the plaintiffs. The plaintiffs are entitled to look for recoupment through the grant of exclusive broadcasting privileges. They have taken proper steps to retain these exclusive rights by selling tickets for admission to such exhibition, which tickets contain the following express contract: " This ticket is sold and purchased and if honored is to be honored upon the express agreement that no motion pictures of the contest herein referred to will be taken and no broadcasting thereof effected by the purchaser or holder of this ticket except as may be authorized by the promoter."

Any rebroadcasting of the plaintiffs' account of the exhibition, whether by paraphrasing or by adoption of its text, would fall within the prohibitions laid down by the United States Supreme Court in *International News Service* v. *Associated Press* (248 U. S. 215). (See, also, Communications Act of 1934, § 325-a.)

In *International News Service* v. *Associated Press* (*supra*) the court held that the competitor could utilize the news accounts as a " tip " that a news event had occurred, and that then the competitor would be privileged to make an independent investigation of the facts to obtain the news for his customers. The plan proposed by the defendants in the present case is clearly an attempt to come within the exception of that case. However, the facts

indicate that compliance with such exception is physically impossible and that the defendants will be rendering merely a lip service to the exception.

This court does not deem it essential in this case to determine what rights, if any, one would have to make an entirely original broadcast based solely upon one's observation from vantage points outside the arena where the exhibition is being held, where, as in this case, the exhibition is a private one, to which persons desiring to witness the same must pay admission fees. In *Rudolph Mayer Pictures, Inc.,* v. *Pathe News, Inc.* (235 App. Div. 774, memorandum decision), an injunction order was sustained where motion pictures had been taken of a boxing exhibition held on Ebbets Field from a building overlooking same. It was there argued that the taking of the pictures was an invasion of the property rights of the promoters. No opinion was written in that case, and it is, therefore, difficult to determine the *ratio decidendi*. In the present case however, the defendants' plan for broadcasting an account of the exhibition will necessarily be based to a substantial degree upon the use of the plaintiffs' broadcast. Under all the circumstances this court cannot reach any conclusion other than that the plan submitted by defendants cannot be utilized without an unlawful appropriation of the substance of the plaintiffs' broadcast.

The plaintiffs' motion for an injunction *pendente lite* is granted. The plaintiffs will be required to furnish a bond in the sum of $3,000.

Settle order on two hours' notice.