**PITTSBURGH ATHLETIC CO. et al. v. KQV BROADCASTING CO.**

No. 3415.

District Court, W. D. Pennsylvania.

Aug. 8, 1938.

Shocmaker & Eynon, of Pittsburgh, Pa., and Miller, Owen, Otis & Bailly, of New York City (George L. Eynon, of Pittsburgh, Pa., and Louis F. Carroll, of New York City, of counsel), for plaintiff Pittsburgh Athletic Co.

Thorp, Bostwick, Reed & Armstrong, of Pittsburgh, Pa., and Webster & Garside and Louis M. Treadwell, all of New York City (Roy G. Bostwick, of Pittsburgh, Pa., and Bethuel M. Webster, of New York City, of counsel), for plaintiffs General Mills, Inc., Socony-Vacuum Oil Co., Inc., and National Broadcasting Co., Inc.

Reed, Smith, Shaw & McClay, of Pittsburgh, Pa. (Elder W. Marshall and Henry Eastman Hackney, both of Pittsburgh, Pa., of counsel), for defendant.

SCHOONMAKER, District Judge.

This is an action in equity in which plaintiffs ask for a preliminary injunction to restrain defendant from broadcasting play-by-play reports and descriptions of baseball games played by the "Pirates," a professional baseball team owned by Pittsburgh Athletic Company, both at its home baseball park in Pittsburgh, known as "Forbes Field," and at baseball parks in other cities.

The plaintiffs have moved for a preliminary injunction pendente lite. This motion was heard on the bill of complaint, injunction affidavits, and counter-affidavits.

The bill of complaint·was filed July 6, 1938. At the first hearing on this motion held July 12, 1938, defendant disclaimed any intention to broadcast the news of any games played by the "Pirates" in cities other than Pittsburgh during the current season; and by affidavit filed in this case stated that no news had·been broadcast by it of such "away" games since May 26, 1938. For that reason there appears to be no such danger of imminent injury to the rights of the plaintiffs as to justify a preliminary injunction, so far as concern any games played by the "Pirates" in cities other than Pittsburgh.

As to the games played, and to be played at Forbes Field in Pittsburgh, defendant admits it has broadcast play-by-play news of the Pittsburgh games, and asserts its intention to continue so to do, averring it secures the news thus broadcast and to be broadcast by it in the future from observers whom it has stationed at vantage points outside Forbes Field who can see over the enclosure of that field and observe the plays as they are made. It asserts it has a legal right to continue this practice. ·

The essential facts are not in dispute. The question·at issue is primarily a question of law. Is the defendant within its legal rights in the practices thus pursued by it? The essential facts of the case may be briefly summarized as follows:

The plaintiff Pittsburgh Athletic Company owns a professional baseball team known as the "Pirates," and is a member of an association known as the "National League." With the several teams of the

members of the League, the "Pirates" play baseball both at its home field and at the home fields of the other members of the League in various cities. The home games are played at a baseball park known as "Forbes Field" which is enclosed by high fences and structures so that the public are admitted only to the Park to witness the games at Forbes Field by the payment of an admission ticket, which provides that the holder of the admission ticket agrees not to give out any news of the game while it is in progress.

The Pittsburgh Athletic Company has granted by written contract, for a valuable consideration, to General Mills, Inc., the exclusive right to broadcast, play-by-play, descriptions or accounts of the games played by the "Pirates" at this and other fields. The National Broadcasting Company, also for a valuable consideration, has contracted with General Mills, Inc., to broadcast by radio over stations KDKA and WWSW, play-by-play descriptions of these games. The Socony-Vacuum Oil Company has purchased for a valuable consideration a half interest in the contract of the General Mills, Inc.

The defendant operates at Pittsburgh a radio broadcasting station known as KQV, from which it has in the past broadcast by radio play-by-play descriptions of the games played by the "Pirates" at Pittsburgh, and asserts its intention to continue in so doing. The defendant secures the information which it broadcasts from its own paid observers whom it stations at vantage points outside Forbes Field on premises leased by defendant. These vantage points are so located that the defendant's observers can see over the enclosures the games as they are played in Forbes Field.

On this state of facts, we are of the opinion that the plaintiffs have presented a case which entitles them under the law to a preliminary injunction.

■ It is perfectly clear that the exclusive right to broadcast play-by-play descriptions of the games played by the "Pirates" at their home field rests in the plaintiffs, General Mills, Inc., and the Socony-Vacuum Oil Company under the contract with the Pittsburgh Athletic Company. That is a property right of the plaintiffs with which defendant is interfering when it broadcasts the play-by-play description of the ball games obtained by

the observers on the outside of the enclosure.

■ The plaintiffs and the defendant are using baseball news as material for profit. The Athletic Company has, at great expense, acquired and maintains a baseball park, pays the players who participate in the game, and have, as we view it, a legitimate right to capitalize on the news value of their games by selling exclusive broadcasting rights to companies which value them as affording advertising mediums for their merchandise. This right the defendant interferes with when it uses its broadcasting facilities for giving out the identical news obtained by its paid observers stationed at points outside Forbes Field for the purpose of securing information which it cannot otherwise acquire. This, in our judgment, amounts to unfair competition, and is a violation of the property rights of the plaintiffs. For it is our opinion that the Pittsburgh Athletic Company, by reason of its creation of the game, its control of the park, and its restriction of the dissemination of news therefrom, has a property right in such news, and the right to control the use thereof for a reasonable time following the games.

■ The communication of news of the ball games by the Pittsburgh Athletic Company, or by its licensed news agencies, is not a general publication and does not destroy that right. This view is supported by the so-called "ticker cases"; Board of Trade v. Christie Grain & Stock Co., 198 U.S. 236, 25 S.Ct. 637, 49 L.Ed. 1031; Hunt v. New York Cotton Exchange, 205 U.S. 322, 27 S.Ct. 529, 51 L.Ed. 821; Moore v. N. Y. Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750, 45 A.L.R. 1370; McDearmott Commission Co. v. Board of Trade, 8 Cir., 146 F. 961, 7 L.R.A.,N.S., 889, 8 Ann.Cas. 759; Board of Trade v. Tucker, 2 Cir., 221 F. 305.

On the unfair competition feature of the case, we rest our opinion on the case of International News Service v. Associated Press, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211, 2 A.L.R. 293. In that case the court enjoined the International News Service from copying news from bulletin boards and early editions of Associated Press newspapers, and selling such news so long as it had commercial value to the Associated Press. The Supreme Court said (248 U.S. at page 236, 39 S.Ct. at page

71): "* * * Regarding the news, therefore, as but the material out of which both parties are seeking to make profits at the same time and in the same field, we hardly can fail to recognize that for this purpose, and as between them, it must be regarded as quasi property, irrespective of the rights of either as against the public.

"In order to sustain the jurisdiction of equity over the controversy, we need not affirm any general and absolute property in the news as such. The rule that a court of equity concerns itself only in the protection of property rights treats any civil right of a pecuniary nature as a property right (In re Sawyer, 124 U.S. 200, 210, 8 S.Ct. 482, 31 L.Ed. 402; In re Debs, 158 U.S. 564, 593, 15 S.Ct. 900, 39 L.Ed. 1092); and the right to acquire property by honest labor or the conduct of a lawful business is as much entitled to protection as the right to guard property already acquired. * * *"

And again at pages 239, 240, 39 S.Ct. at page 72: "* * * The right of the purchaser of a single newspaper to spread knowledge of its contents gratuitously, for any legitimate purpose not unreasonably interfering with the complainant's right to make merchandise of it, may be admitted; but to transmit that news for commercial use, in competition with complainant—which is what defendant has done and seeks to justify—is a very different matter. * * *"

In Twentieth Century Sporting Club, Inc., v. Transradio Press Service, Inc., 165 Misc. 71, 300 N.Y.S. 159, the New York Supreme Court applied the principles of unfair competition to a broadcast of the Louis-Farr fight and entered an injunction.

In Associated Press v. KVOS, Inc., 9 Cir., 80 F.2d 575, a preliminary injunction was granted to restrain Station KVOS from appropriating and broadcasting news gathered by the Associated Press on the ground that the broadcasting station was in competition with the Associated Press in the business of publication of news for profit.

Defendant contends it is not unfairly competing with any of the plaintiffs because it obtains no compensation from a sponsor or otherwise from its baseball broadcasts. It concedes, however, that KQV seeks by its broadcast of news of baseball games to cultivate the good will of the public for its radio station. The fact that no revenue is obtained directly from the broadcast is not controlling, as these broadcasts are undoubtedly designed to aid in obtaining advertising business. See Waring v. WDAS Station, Inc., 327 Pa. 433, 435, 194 A. 631; Witmark & Sons v. Bamberger & Co., D.C., 291 F. 776; Remick & Co. v. Automobile Accessories Co., 6 Cir., 5 F.2d 411, 40 A.L.R. 1511; Irving Berlin, Inc., v. Daigle, 5 Cir., 31 F.2d 832; Herbert v. Shanley Co., 242 U.S. 591, 37 S.Ct. 232, 61 L.Ed. 511; Associated Press v. KVOS, Inc., 80 F.2d 575.

Defendant seeks to justify its action on the ground that the information it receives from its observers stationed on its own property without trespassing on plaintiffs' property, may be lawfully broadcast by it. We cannot follow defendant's counsel in this contention for the reasons above stated. The cases cited by them we have carefully studied and are unable to accept as authority. In the Australian case, Victoria Park Racing, etc., v. Taylor, 37 New South Wales 322, where the information broadcast was obtained from a tower adjoining a race track, the court refused an injunction, because there was neither a trespass on plaintiff's race track, or a nuisance created by defendant.

The doctrine of unfair competition is not recognized under the English Common Law. Therefore this decision is not an authority.

In the case of Sports and General Press Agency v. Our Dogs Publishing Company, [1916] 2 K.B. 880, which involved the taking of photographs from a point outside the dog-shows grounds, is likewise a case for the application of English law. The question of unfair competition was not considered at all, and could not be recognized under the English law.

The case of National Exhibition Company v. Tele-Flash, Inc. (D.C.S.D.N.Y. 1936) 24 F.Supp. 488, presents a case somewhat similar to the case at bar. However, we are unable to follow the court's ruling, because we do not believe that the District Judge correctly interpreted the law as to unfair competition as applicable to cases of this kind.

### Conclusions of Law.

1. This Court has jurisdiction of this cause by reason of diversity of citizenship and the amount in controversy.

2. The right, title and interest in and to the baseball games played within the parks

of members of the National League, includ-ing Pittsburgh, including the property right in, and the sole right of, disseminating or publishing or selling, or licensing the right to disseminate, news, reports, descriptions, or accounts of games played in' such parks, during the playing thereof, is vested exclu-sively in such members.

3. The actions and threatened actions of the defendant constitute a direct and irre-parable interference with, and an appropria-tion of, the plaintiffs' normal and legitimate business; and said action is calculated to, and does, result in the unjust enrichment of the defendant at the expense of the plain-tiffs and each of them.

4. The defendant's unauthorized broad-casts of information concerning games-played by the Pittsburgh team constitute un-fair competition with the plaintiffs and each of them.

5. The defendant wrongfully deprives the plaintiffs and each of them of the just benefits of their labor; and expenditures in respect of the baseball games and the pub-lic dissemination of news thereof as alleged in the complaint; and the action, threatened action and practice of the defendant consti-tute a fraud on the public.

6. The actions and threatened actions of the defendant herein alleged constitute a wrongful interference with the contractual rights and obligations of the parties.

7. The defendant's action as herein de-scribed constitutes a violation of the Com-munications Act of 1934, 47 U.S.C.A. § 151 et seq.

8. The plaintiffs have no adequate remedy at law.

9. The plaintiffs are entitled to and are hereby granted a preliminary injunction.