**SOUTHWESTERN BROADCASTING CO. et al. v. OIL CENTER BROADCASTING CO. et al.**

**No. 4548.**

Court of Civil Appeals of Texas. El Paso.
Nov. 26, 1947.
Rehearing Denied Dec. 18, 1947.

Burges, Scott, Rasberry & Hulse, of El Paso, Moss & Stowe and Downey & Parr, all of Odessa, T. S. Shelton and C. C. English, both of Dallas, for appellants.

Whitaker, Turpin, Kerr, Smith & Brooks, of Midland, Blanton, Deadrick & McMahon and Raymond D. Wier, all of Odessa, for appellee.

PER CURIAM.

This is an appeal from the order of the District Judge of Ector County granting a temporary injunction. Oil Center Broadcasting Company, a corporation, sued the Southwestern Broadcasting Company, a corporation, and Southwestern Bell Telephone Company, a corporation, seeking an injunction to prevent the Southwestern Broadcasting Company and the Telephone Company from broadcasting from the stadium of the Odessa High School a play by play account of the football games played by the Odessa High School team during the 1947 and 1948 seasons.

The plaintiff is a duly licensed radio broadcasting company known as "KRIG" and will be hereafter so designated. The Southwestern Broadcasting Company is likewise a duly licensed radio broadcasting company known as "KOSA" and will be hereinafter so designated. The Ector County Independent School District will be hereinafter mentioned and will be referred to as the "District", and the football field owned by the Ector County Independent School District will be referred to by its name, "Fly Field."

KRIG claimed the exclusive right to broadcast a play by play account of the games played by the Odessa High School at Fly Field under and by virtue of a contract to that effect entered into between KRIG and the Board of Trustees of the District. In substance, the contract as plead was that in consideration of KRIG broadcasting all the games played from July 7, 1947, to January 1, 1949, it was to have the exclusive privilege of broadcasting such games from Fly Field. It was averred that the Telephone Company was furnishing KOSA with telephone service from the football field by means of which it was enabled to broadcast the play by play progress of the games. The Ector County Broadcasting Company intervened, made itself a party-defendant, and inter-plead the Ector County Independent School District.

The District filed a plea of intervention and prayed that it be made a party-plaintiff, set up its contract with KRIG, adopted the pleading of KRIG, and further set up as to the telephone company that it was maintaining the wires on one of which the defendant KOSA was transmitting broadcasts from the football field; that this wire was maintained on said field without its consent; that the action of the telephone company amounted to a tresspass in so maintaining the wire and the company proposed to continue such trespass.

Defendant KOSA admitted that is had been broadcasting play by play accounts of the games played on the football field and used the facilities furnished by the telephone

company. It further avers that the contract relied upon by KRIG was invalid as constituting a monopoly under the Constitutions of the United States and the State of Texas. The following appears in the Answer:

("Defendant further alleges that its co-defendant, the Southwestern Bell Telephone Company, has installed by virtue of proper right and easement telephone lines into the said stadium known as Fly Field, that this defendant has paid therefor and is entitled through its agents, having gained proper and legal admittance to such field, to use the equipment so installed by its co-defendant, Southwestern Bell Telephone Company, and to broadcast said games.")

("(7) This defendant denies all the allegations of Paragraph 11 except that this defendant admits that its co-defendant, Southwestern Bell Telephone Company, is furnishing facilities to this defendant to broadcast football games from Fly Field under the circumstances hereinbefore alleged.")

The evidence is undisputed in this case that KRIG and its co-plaintiff, the District, entered into the contract alleged. Broadcasting the football games is done from a booth in the grandstand. Into this booth the Telephone Company has run five telephone wires. KOSA uses one of these wires by attaching its instruments thereto. These wires were put in about four or five years ago by the Telephone Company. There seems to have been no express permission to install them, but up until the date of this dispute, the District made no /objection thereto.

The Board of Trustees of the District, before entering into the contract with KRIG, gave publicity as to the same. Before entering into the contract, it obtained the opinion of the Attorney General that it had a legal right to enter into the contract. The Summary of the Opinion is as follows:

"The Board of Trustees of Ector County Independent School District has the authority to grant an exclusive contract with a radio station to broadcast regularly scheduled football games."

The Telephone Company has not appealed from the order of the Trial Judge granting the temporary injunction.

Five points are urged by the appealing defendants for a reversal. These are, in substance, that the injunction changes the status quo and awards the ultimate relief sought; is violative of the Constitutions of the United States and the State of Texas; that it is an attempt to confer a special privilege in violation of the Constitution of Texas and say it is an attempt to create a monopoly in violation of the State Constitution and the laws of the United States; and further is an attempt on the part of the Board of Trustees to surrender their legislative discretion.

If authority is not expressly granted to independent districts to conduct, manage and charge admission for athletic contests by Article 2802e, Vernon Ann.Civ.Statutes, such power and authority must be necessarily inferred therefrom. Under the various provisions of said article, powers are given to acquire, construct, and repair gymnasia and stadia by sale of revenue bonds. The power conferred could not be exercised save by staging athletic exhibitions so as to derive revenue therefrom. It is thought, by necessary implication, that there is power to charge admission and sell concessions, even there be no indebtedness. The provision of the article in question is that any surplus after serving the revenue bonds is to be applied to any lawful purpose.

Article 2780 gives a very broad discretion to the Board of Trustees in the management and control of the schools.

■ Under the auspices of the public schools from one end of this country to the other, athletic exhibitions such as football games are conducted on the property owned and maintained by such schools. It is thought to be a matter of judicial notice that such games are supported by the admission charged and through the sales of concessions. In many cases the concessions are operated by the schools themselves.

■ The right to broadcast a description of the action of an athletic contest is a valuable right. It has and should be protected by injunction. Twentieth Century Sport-

ing Club v. Trans-radio Press Service, 165 Misc. 71, 300 N.Y.S. 159; Pittsburgh Athletic Co., v. KQV Broadcasting Co., D. C., 24 F.Supp. 490. With the coming into general use of television, it may be that more revenue might be realized from this right than from the admission fees.

Were these football games conducted by private individuals or corporations, there could be no question of the legality of the contract here in question. The power of the proprietor to exclude or eject spectators is plenary. Terrell Wells Swimming Pool v. Rodriguez, Tex.Civ.App., 182 S.W.2d 824, writ refused.

With or without reason, under the authority of the case just cited, the proprietor may refuse to sell a ticket to the exhibition, or, having sold its ticket, may at will revoke the license thereby granted. Further, upon tender of return of the admission fee, use sufficient force to eject the licensee if the licensee refuses to leave the premises.

If the contract in question be invalid then it must be on account of the nature of the District. An independent school district is a quasi-municipal corporation. Under the law it is entrusted with the duty of managing the schools to the extent of the power delegated. It has been said that the public school system is a part of the State Government. Mumme v. Marrs, 120 Tex. 383, 40 S.W.2d 31.

The question posed by this appeal has never, so far as we have been able to find, been authoritatively passed upon by the courts of Texas. The clear and able opinion of the Attorney General, while not binding on the Court, is entitled to great weight in the disposition of the question presented. It intrinsically evidences great legal ability and painstaking and careful consideration.

In our opinion, even though the District is a quasi-municipal corporation, it has a right to seek to make a profit out of the games played on its premises; the profit, of course, to go for the benefit of the District. We can see no good reason why it should not have the same freedom of action as a private person or corporation putting on the games. The District owns the field and the grandstand. The appealing defendants have no right, against the will of the District, to enter upon its field and pursue a business activity thereon for profit. The Telephone Company has no right to maintain wires on the premises of the District to aid KOSA in pursuing a business for profit against the will of the Board of Trustees.

The duty imposed by the contract in question on KRIG was to broadcast all games. It is a reasonable inference that the broadcasting of the games would stimulate interest therein and promote the attendance at future games. In making this contract, the School Board was not seeking to arbitrarily benefit KRIG, but furthering the interest of the District, by which contract it was assured that the games would be broadcast.

The next thing to witnessing thrilling exhibitions such as football games is listening to a play by play description thereof. There can be nothing unreasonable or unfair in exacting from a radio corporation a consideration for the privilege which it sells to advertisers. There is no essential difference between the exclusive right to sell programs, cushions and refreshments at such games and the privilege of broadcasting a play by play account thereof. As a matter of judicial notice, we think that independent districts all over the state, and all over the country for that matter, sell exclusive privileges to furnish the customer with programs, cushions and refreshments.

The Attorney General's opinion, among other authorities, cites the case of Royse Independent School District v. Reinhardt, Tex.Civ.App., 159 S.W. 1010. In that case, citizen-taxpayers were attempting to restrain the members of the Royse Boosters Club and the Trustees and the Royse Independent School District from performing a contract between said Trustees and members of the Club, by the terms of which the Trustees granted to the Club the privilege of using the south end of the public school campus as a ball ground during the summer vacation. This case held that the Board of Trustees were given the exclusive power of management, regulation and control of the schools and school property within the dis-

trict and had the power to grant to the Royse Boosters Club the right to use the school's baseball field so long as said use did not interfere with the school's activity or injure the school's property. This contract necessarily conferred an exclusive right. No others could claim the right to so use such land of the district. In our opinion, this case is strong authority supporting the proposition that the district here had the right to make the contract here in question. See also Henrietta Country Club v. Jacobs, Tex.Civ.App., 269 S.W. 137.

Appellants here rely strongly upon the case of the City of Brenham v. Brenham Water Company, 67 Tex. 542, 4 S.W. 143. There is a fundamental distinction between that case and the instant case. In that case, the privilege to be exercised was not on land owned by the City over which it had the exclusive right of possession and control. Here the District is entitled to the exclusive control and possession of the land. Being entitled to the exclusive control and possession of the land, the District has the power to say what activities shall be conducted thereon and who shall have the privilege of conducting same. The authorities cited below are believed to sustain the proposition that the contract in question does not violate sections 3, 8, 17 or 26, of Article 1, of our Constitution, Vernon's Ann.St.Const.

It is thought that an unlawful monopoly is not created by the contract nor that the exclusive privilege granted is unlawful. Fort Worth & D. C. R. Co. v. State, 99 Tex. 34, 87 S.W. 336, 70 L.R.A. 950; Lewis v. Weatherford M. W. & N. Ry. Co., 36 Tex.Civ.App., 48, 81 S.W. 111; State v. Schweickrdt, 109 Mo. 496, 19 S.W. 47; 29 Tex.Jur. p. 766, par. 16.

However, a decision as to the legality, or illegality of the contract in question is not deemed essential to this appeal. If the District does not desire KOSA to broadcast from the football field which it owns and has a right to exclusive possession and control, it has a right to prevent such conduct. In case the party fails to cease such conduct, it has the right to use such force as it necessary to eject him from the field. Terrell Wells Swimming Pool v. Rodriguez, Tex.Civ.App., 182 S.W.2d 824, writ refused.

In our opinion, the appellants have no grounds to complain of a temporary injunction that forbids them from broadcasting from premises in the exclusive control of the District and which enjoins them from using the field equipment which the Telephone Company has no right to maintain on the field against the will of the District. This temporary injunction, in terms, enjoins the defendants from broadcasting any of the games. In our opinion, as far as the learned Trial Judge intended to go, was to enjoin them from broadcasting a play by play account from the field. To the end that there be no possible misconception of the scope and the extent of the injunction, it is thought best to modify the order in this respect: The injunction is modified so as to enjoin them from broadcasting a play by play account from the field, the temporary injunction of course to remain in effect until the final trial of the cause. That is, they are neither to use nor maintain on said field any facilities, or instruments, by means of which a play by play account is transmitted for a broadcasting.

With this modification, any complaint that this injunction in any way interferes with freedom of speech and freedom of press, disappears. It is likewise thought that there is no merit in the contention that the temporary injunction interferes with the status quo. Appellants cannot contend, because they have violated the demands of the District to cease and desist from broadcasting from the field, that that created a status quo which the Trial Court should not have interfered with by the injunction. The status quo they seek to maintain was brought about by their unjustified refusal to heed the lawful demands of the District.

As modified, the order of the Trial Court is in all things affirmed.

PRICE, C. J., and McGILL, J., concur.

SUTTON, J., not participating.