Pottstown Daily News Publishing Company *v.*
Pottstown Broadcasting Company, Appellant.

384

Argued April 18, 1963.   Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*Jules Pearlstine*, with him *Pearlstine, Salkin &
Hardiman*, for appellant.

*William A. O'Donnell, Jr.*, with him *John R. Henry*,
and *O'Donnell, Weiss, Mattei & Suchoza*, for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, July
2, 1963:

Pottstown Daily News Publishing Company (News
Company), the publisher of the "Pottstown Mercury",
a newspaper, instituted an action in equity in the Court
of Common Pleas of Montgomery County against the
Pottstown Broadcasting Company (Broadcasting Com-
pany), the owner of WPAZ, a radio station, to enjoin
the latter "from any further appropriation of [News
Company's] local news stories without its permission
or authorization."

The gist of the News Company's complaint is that
its newspaper and the radio station both "disseminate
news to the same general area and sell advertising with-
in the same area"; that the News Company expends

considerable money to operate its newspaper and particularly "to develop its sources of local news, train personnel, and to accurately and concisely compose local news items", such specialized treatment of local news being the principal factor in its circulation and sale of advertising copy; that the News Company "has copyrighted such local news items", notice of such copyright being carried on the masthead of the newspaper; that the Broadcasting Company, "without license, permission, or authority", uses the local news gathered by the personnel of the News Company and published in its newspaper, for its own daily broadcast of news "in violation of the right that the [News Company] has obtained by copyrighting *and also* violates the property rights of the [News Company] in the aforesaid news items." (Emphasis supplied).

In its answer, containing new matter, the Broadcasting Company, inter alia, avers that the Court of Common Pleas of Montgomery County lacked jurisdiction to entertain this action because the causes of action averred in the complaint are based upon a violation of the copyright laws of the United States and an unfair competition claim joined with a substantial and related claim under the copyright laws over which the federal courts have *exclusive* jurisdiction and, further, that the News Company has no common law property right in the news upon which a claim of unfair competition can be predicated. The Court of Common Pleas of Montgomery County, being of the opinion that the News Company's complaint did allege "such a property right as is the subject of an action in unfair competition", held that it could "retain jurisdiction for the purpose of determining that cause even though [such cause] is joined with a 'substantial and related claim under the copyright laws' " and the court denied the Broadcasting Company's motion to dismiss for lack of jurisdiction. From that order this appeal was taken.

The Broadcasting Company's initial contention is that jurisdiction to entertain *both* causes of action declared upon in this complaint is *exclusively* in the federal courts by virtue of the provisions of the Act of June 25, 1948, C. 646, 28 U.S.C.A. §1338(a), (b), which provides: "(a) The district courts shall have original jurisdiction *of any civil action arising under any Act of Congress relating to* patents, *copyrights and* trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent and copyright cases. (b) The district courts shall have original jurisdiction *of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright,* patent or trade-mark *laws."* (Emphasis supplied). In line with this contention, the Broadcasting Company argues that the instant complaint contains *two* causes of action, i.e., one cause of action which arises under the United States laws relating to copyright *and* another cause of action which asserts an unfair competition claim joined with a substantial and related claim under the United States copyright laws, and that, *as to both causes of action,* the 1948 statute, supra, vests *exclusive* jurisdiction in the federal courts. Since an examination of the complaint clearly indicates that it does state these two causes of action, our initial inquiry is whether the 1948 statute confers *exclusive* jurisdiction in *both* causes of action upon the federal courts.

In construing this Act we bear in mind the rule that a state court will not be held divested of jurisdiction by an act of the Congress unless the intent to so divest clearly appears: *Guss v. Utah Labor Relations Board,* 353 U. S. 1, 77 S. Ct. 598.

An examination of the language of Section 1338(a), supra, reveals clearly the Congressional intent that the jurisdiction of the federal courts in civil actions arising under Acts of the Congress relating to copyright

shall be *exclusive;* the second sentence of that section *specifically provides* that the jurisdiction of the federal courts in that class of action *"shall be exclusive"* of that of the state courts.[1] Therefore, insofar as the instant complaint avers and alleges a cause of action relating to a copyright held by the News Company, such cause of action would be cognizable *only* in the federal, and not in the state, courts and, to the extent that this complaint alleges such cause of action, the Common Pleas Court of Montgomery County cannot entertain jurisdiction of such cause of action. The Broadcasting Company properly challenged the jurisdiction of the state court to entertain that cause of action and, if that were the *only* cause of action averred, the complaint would have to be dismissed.

However, the instant complaint avers an additional cause of action, i.e., that the Broadcasting Company is engaging in unfair competition. The question arises whether, under the 1948 statute, supra, such action is cognizable *only* in the federal courts. The Broadcasting Company argues that this second cause of action is *exclusively* within the jurisdiction of the federal courts on the theory that it asserts a claim of unfair competition which is joined with a substantial and related claim under the copyright laws of the United States and, by virtue of §1338(b), supra, such cause of action is *exclusively* within the jurisdiction of the federal courts.

---

[1] Prior to this 1948 Act, it was provided that "[t]he jurisdiction vested in the courts of the United States . . . shall be exclusive of the courts of the several States: . . . Fifth. Of all cases arising under the patent-right, or copyright laws of the United States" (R.S. Sec. 711, March 3, 1911, c. 231, Sec. 256, 36 Stat. 1160; October 6, 1917, c. 97, Sec. 2, 40 Stat. 395; June 10, 1922, C. 216, Sec. 2, 42 Stat. 635) and such jurisdiction was conferred on District Courts in "all suits at law or in equity arising" under the copyright laws (Act of March 3, 1911, c. 231, §24, para. 7, 36 Stat. 1092).

Assuming, arguendo, that this second cause of action does assert a claim of unfair competition joined to a substantial and related claim under the copyright laws of the United States, does §1338(b) vest the federal courts with *exclusive* jurisdiction over such cause of action? Neither historically nor by its language does §1338(b) reach such a result.

Historically, an action for unfair competition is a common law cause of action which does not arise under any law of the United States (*Fry v. Layne-Western Company,* 282 F. 2d 97, 99) and ordinarily would be cognizable only by the courts of the several states. However, in *Hurn v. Oursler,* 289 U. S. 238, 53 S. Ct. 586, the United States Supreme Court held that a federal district court *might* accept jurisdiction of a non-federal issue—unfair competition—which is related to a substantial federal issue—one arising under the patent or copyright laws of the United States—if it appears that both the federal and the non-federal issues rest on the same facts. Until *Hurn v. Oursler,* in the absence of diversity of citizenship, claims based upon unfair competition were determinable only in state courts but, under *Hurn v. Oursler* and its doctrine of *pendent* jurisdiction, federal courts were then permitted to consider claims of unfair competition if related to a substantial federal issue when both issues were based on substantially the same facts and federal courts were permitted to determine such a claim of unfair competition even though the court eventually denied the validity of the claim that a patent, trademark or copyright had been infringed or declared the validity of the patent, trademark or copyright invalid.[2]

The doctrine of *Hurn v. Oursler* became embodied in §1338(b) of the 1948 statute. "[Section 1338(b)]

_____

[2] See also: *Armstrong Paint & Varnish Works v. Nu-Enamel Corporation,* 305 U.S. 315, 59 S. Ct. 191.

[was] added and [was] intended to avoid 'piecemeal' litigation to enforce common-law and statutory copyright, patent and trade-mark rights by specifically permitting such enforcement in a single civil action in the district court": Revisers' Notes to 28 U.S.C.A., §1338(b), 1948 Revision of Judicial Code. In *General Radio Co. v. Superior Electric Company,* 293 F. 2d 949, 952, the Court said: "The causes of action for patent infringement and unfair competition, although separate, are so allied because of the similarity of the facts involved in each that when joined jurisdiction over the latter is conferred by jurisdiction over the former under the doctrine of Hurn v. Oursler, 1933, 289 U. S. 238, 53 S. Ct. 586, 77 L. Ed. 1148 now embodied in Title 28 U.S.C. §1338(b)." Obviously, there is a two-fold reason for this. One is the convenience of the parties and the other the efficient and economical functioning of the courts. Two trials where one would do serve no useful purpose but would only result in duplication of judicial time, effort and expense and cause needless inconvenience and expense to parties, to witnesses and to counsel.[3]

There can be no doubt that, under §1338(b), supra, federal courts *may* now exercise pendent or derivative jurisdiction over a claim of unfair competition which is joined with a claim under the copyright laws if the latter claim is "substantial and related". However, such *permissive* jurisdiction does not render the jurisdiction of the federal courts *exclusive* in nature or oust state courts of their jurisdiction over claims of unfair competition. In this connection, it is highly significant to note that the Congress in the enactment of §1338(a)

---

[3] See also: *Lane Bryant, Inc. v. Glassman,* 95 F. Supp. 320; *Caldwell-Clements, Inc. v. McGraw-Hill Publishing Co.,* 12 F.R.D. 403; *Bar's Leaks Western, Inc. v. Pollock,* 148 F. Supp. 710; *Scarves by Vera, Inc. v. United Merchants & Mfrs., Inc.,* 173 F. Supp. 625.

specifically prescribed that, in the class of action therein considered, the jurisdiction of the federal courts should be *exclusive* but did not do so in its enactment of §1338(b). The inclusion of the sentence specifically rendering exclusive the jurisdiction conferred in §1338(a) and the omission of such a sentence in §1338(b) is a revelation of the Congressional intent that jurisdiction under §1338(b) be permissive rather than exclusive. The purpose of §1338(b)—to avoid piecemeal litigation—is not persuasive of a Congressional intent to render the jurisdiction conferred as *exclusive*. In our view, even if the second cause of action in this complaint be considered a claim of unfair competition which is joined by a claim under the copyright laws which latter is substantial and related, such cause of action is cognizable by and within the jurisdiction of state courts and the court below properly refused to dismiss the complaint as to this second cause of action.

The next contention of the Broadcasting Company is that the second cause of action fails to set forth a cause of action cognizable in equity inasmuch as the News Company does not have a property right which has been violated under the averments of the complaint.

The leading case on the subject of unfair competition in the area of the law covered by this second cause of the complaint is *International News Service v. Associated Press,* 248 U. S. 215, 39 S. Ct. 68. In that case, the Associated Press, an unincorporated association of newspaper publishers, engaged in the gathering of news, through trained personnel and at great expense, and such gathered news, *without copyright,* was telegraphed by the Associated Press daily to its assessment-paying members throughout the country for their exclusive publication. The International News Service, a rival corporation which served other newspapers for pecuniary returns, through the media of early pub-

lication in newspapers and from bulletins of members of the Associated Press, obtained Associated Press' news and sent such news, either as written or re-written, to its own newspaper customers throughout the country enabling the latter to compete with news-paper members of the Associated Press in the prompt publication of the news which had been obtained through the trained personnel and at the expense of the Associated Press. The United States Supreme Court held that the Associated Press, as against the International News Service, possessed an equitable "quasi-property" right in the news, even after its pub-lication, and that the appropriation of such news for its own gain and profit amounted to unfair competition and such conduct was enjoinable.[4]

In *A.L.A. Schechter Poultry Corp. v. United States,* 295 U. S. 495, 531-532, 55 S. Ct. 837, Mr. Chief Justice HUGHES stated: " 'Unfair competition,' as known to the common law, is a limited concept. Primarily, and strictly, it relates to the palming off of one's goods as those of a rival trader. . . . In recent years its scope has been extended. It has been held to apply to *mis-appropriation* as well as *misrepresentation.*" (Empha-sis supplied).

In *Associated Press v. KVOS, Inc.,* 80 F. 2d 575 (reversed for want of jurisdiction, 299 U. S. 269) the charge was made that radio station KVOS had ap-

---

[4] Mr. Justice Holmes, concurring, on a different theory, stated: "The ordinary case [of unfair competition], I say, is palming off the defendant's product as the plaintiff's but the same evil may follow from the opposite falsehood—from saying, whether in words or by implication, that the plaintiff's product is the defendant's and that, it seems to me, is what happened here. . . . The false-hood is a little more subtle, the injury a little more indirect, than in ordinary cases of unfair trade, but I think that the principle that condemns the one condemns the other. It is a question of how strong an infusion of fraud is necessary to turn a flavor into a poison."

propriated news from the editions of three newspapers, members of Associated Press, which news had been distributed to the newspapers by the Associated Press and had been collected for the papers by the news gathering service of the Associated Press. The news thus appropriated was broadcast by KVOS in broadcasts completed before all the papers were distributed and while the news was "hot". Although KVOS to show lack of competition urged that it sought the attention of a listening public which paid nothing to the radio station instead of a reading public which paid for its papers and although it urged that the "pirated" news material and accompanying advertisement reached its prospective customers almost instantaneously while the publication and distribution of the newspapers took from 2 to 24 hours, nevertheless the Court enjoined the radio station from the use of such news.

In Chafee, Unfair Competition, 53 Harv. L. Rev. 1310, it was said: ". . . the Supreme Court [in International, supra,] established the proposition that news while fresh is protected from appropriation for gainful purposes, even if the appropriator is not a rival news agency but is, for example, *a radio broadcasting station.*" (Emphasis supplied) The concept of unfair competition set forth in *International* was adopted by our Court in *Waring v. WDAS Station, Inc.,* 327 Pa. 433, 194 A. 631.[5]

An examination of the instant complaint reveals that it does not charge eo nomine unfair competition. Such failure, however, is of no significance if the legal

---

[5] See also: *Kiernan v. Manhattan Quotation Telegraph Co.,* 50 How. Pr. (N.Y.) 194, 196; *National Tel. News Co. v. Western Union,* 119 Fed. 294, 296; *F. W. Dodge Co. v. Construction Information Co.,* 183 Mass. 62, 64, 66 N.E. 204; *Twentieth Century Sporting Club, Inc. v. Transradio Press Service, Inc.,* 300 N.Y.S. 159; *Pittsburgh Athletic Co. v. KQV Broadcasting Co.,* 24 F. Supp. 490.

effect of the acts charged *does* constitute unfair competition. As this Court said in *Waring*, supra (p. 456) : "Defendant contends that a charge of unfair competition was not pleaded in the bill; the facts upon which it rests, however, were sufficiently alleged, and *it was not necessary for plaintiff to employ the precise term to designate the legal effect of the acts complained of.*" (Emphasis supplied). Academic categorization of torts has always followed rather than preceded the recognition by common law courts that certain allegations of facts constitute a legal wrong.

In this day and age no court can fail to take note of the fact that newspapers, radio and television stations compete with each other for advertising which has become a giant in our economy. In fact, the presentation of news and entertainment has become almost a subsidiary function of newspapers, radio and television stations.[6] Advertising is the life-blood of newspapers, radio and television and the presentation of news by all three media is a service designed to attract advertisers.

Taking into consideration the circumstances and the character of the businesses of the respective parties, as averred, the News Company has a commercial package of news items to service its advertising business upon which to base a cause of action in tort against a competitor allegedly converting the news items to its own uses in pursuit of advertising. The distinction we draw is fine; for the purpose of an action of unfair competition the specialized treatment of news items as a service the newspaper provides for advertisers gives to the News Company a limited property right which the law will guard and protect against

---

[6] See: *Associated Press v. KVOS, Inc.,* supra; *Witmark v. Bamberger,* 291 Fed. 776; *Remick v. American Automobile Accessories Co.,* 5 F. 2d 411; *Irving Berlin, Inc. v. Daigle,* 31 F. 2d 832; *Herbert v. Shanley Co.,* 242 U.S. 591, 37 S. Ct. 232.

wrongful invasion by a competitor, whereas for the purpose of an action for the infringement of copyright, the specialized treatment of the news is protected because "the law seeks to encourage creative minds" (*Morse v. Fields,* 127 F. Supp. 63).

Competition in business is jealously protected by the law and the law abhors that which tends to diminish or stifle competition. While a competitor may, subject to the patent, copyright and trademark laws, imitate his rival's business practices, processes and methods, yet the protection which the law affords to competition does not and should not countenance the usurpation of a competitor's investment and toil. In the case at bar, if the News Company can establish by proof that the Broadcasting Company has, without authority, used the local news items gathered through the specialized methods and by the trained personnel of the News Company,[7] such unauthorized use constitutes a violation of a property right.

In the case at bar, the inquiry arises on the pleadings. Our examination of the pleadings convinces us that, insofar as the News Company pleads a violation of the copyright laws of the United States, such cause of action is cognizable only in the federal courts but insofar as the News Company pleads that the Broadcasting Company has "pirated" news items gathered through the special services of the News Company, such states a violation of a property right and a claim of unfair competition which the state courts have jurisdiction to determine. The instant complaint sufficiently states a cause of action cognizable by a court of this Commonwealth and the jurisdiction of such court is not ousted merely because in the same complaint there

---

[7] It has been the subject of commentary that the "quasi-property" protected in *International,* supra, was not the news—public property—but a "highly organized corps of specially trained and efficient agencies" who gather the news: 10 Temple L. Q. 338.

is stated another cause of action over which the state court has no jurisdiction.

Order affirmed.   Costs on Broadcasting Company.